In the Matter of the Estate of WILLIAM BRANDT, Deceased. JODY B. GROTZINGER et al., Respondents; BEULAH LEVINE et al., Appellants.

First Department, June 16, 1981

APPEARANCES OF COUNSEL

*Max Freund* of counsel *(Manuel Maxwell, Joel W. Sternman* and *Roger D. Lorence* with him on the brief; *Rosenman Colin Freund Lewis & Cohen,* attorneys), for Martin Levine, appellant.

*Daniel Eisenberg* of counsel *(Greenfield Eisenberg Stein & Senior,* attorneys), for Richard Brandt, appellant.

*Marshall C. Berger* of counsel *(Howard S. Modlin* with him on the brief; *Weisman, Celler, Spett, Modlin & Wertheimer,* attorneys), for Trustees, appellants.

*Gerald Dickler* of counsel *(Paul Sarno* and *Robin Hirsch* with him on the brief; *Hall Dickler Lawler Kent & Howley,* attorneys), for respondents.

## OPINION OF THE COURT

SULLIVAN, J. P.

Petitioners, Jody Brandt Grotzinger and Geoffrey Brandt, partial remaindermen of two trusts under their grandfather's will, commenced this proceeding in the Surrogate's Court to remove the three surviving trustees for violations of fiduciary duty and for an assessment of damages against Martin Levine and Richard Brandt, the general partners of a limited partnership in which the trusts have a 50% limited partnership interest.

One trust is a marital trust (Share 1 Trust) under which the life beneficiary, the testator's widow, has a general power of appointment; the other (Share 2 Trust) is a nonmarital trust without a power of appointment. The income from both trusts is payable to the widow. The other trust remaindermen are the testator's three surviving children, who are also the trustees and who together have a 75% beneficial interest, and petitioners' mother (the widow of the predeceased child of the testator), who has a 12½% beneficial interest. Petitioners' combined interest in the Share 1 Trust (assuming the power to appoint is not exercised) and in the Share 2 Trust is 12½%. Their beneficial interest in the principal of the partnership is either 6¼% or 3⅛%, depending on the widow's exercise of the power of appointment.

At his death in 1965 the testator, William Brandt, owned a 50% interest as a general partner in Forty-Second Street Company, a limited partnership, which, under long-term leases, rented a number of valuable motion picture theaters on 42nd Street between Seventh and Eighth Avenues, in New York City. After his death, each trust received one half of the testator's 50% interest in the partnership, i.e., a 25% interest. The trustees thereafter entered into an agreement with the testator's brother, Harry, the surviving general partner of the partnership, and the limited partners, to convert the testator's 50% general partnership interest into a 50% limited partnership interest. Under the agreement Harry was to continue as general partner and, upon his death, Martin and Richard, Harry's sons, were to become the general partners. Harry died in 1972.

This proceeding was precipitated by a trustees' intermediate account filed in the Surrogate's Court in 1978, after the death of the testator's attorney, one of the original trustees. In that proceeding petitioners alleged, *inter alia*, that the trustees, anticipating that the widow would exercise the power of appointment so as to divest petitioners of their interest as beneficiaries of the assets of the Share 1 Trust, conspired with Martin and Richard to divert the assets of the Share 2 Trust to the Share 1 Trust and filed a fraudulent account grossly understating the assets distributed to the Share 1 Trust. That charge is repeated in the instant proceeding.

In seeking their removal petitioners allege that the trustees together with Martin and Richard, conspired to loot the assets of the two trusts. They further allege that Richard and Martin, with the imprimatur of the trustees, systematically diverted funds from the partnership and several related corporate entities and other partnerships in which the trusts own an interest for the collective benefit of themselves, the trustees and their relatives, thereby diminishing the value of these entities and, by necessary implication, the interest of the trust beneficiaries therein.

In addition to seeking the trustees' removal, petitioners ask that Martin and Richard account for and restore the sums which they have diverted "to such parties including

the [t]rusts" as the court directs. Thus, the petition attempts to stitch together two distinct claims—one against the trustees for self-dealing and violation of fiduciary duty, the other against Martin and Richard for the waste and diversion of partnership assets which are owned beneficially, in substantial part, by the trust remaindermen. While neither of the general partners is a trustee, Martin is married to one of the trustees, and Richard is a cousin of all three.

By separate motions, Martin and Richard moved to dismiss the petition on the grounds, *inter alia*, that the Surrogate's Court lacked subject matter jurisdiction over the claims relating to their conduct as general partners of a partnership and for failure to state a cause of action because the petition is asserted in petitioners' own, and not the partnership's behalf. The trustees moved also to strike all allegations relating to income since petitioners have no interest in income and the widow, the only person with standing to complain of those acts charged which relate to income, has declined to do so. The Surrogate denied the motions, from which denial this appeal is taken. The order should be affirmed.

Petitioners contend that as part of the alleged conspiracy between the trustees and Martin and Richard, the trustees, *inter alia*, surrendered control of the partnership by converting the trusts' interest therein from a general partnership interest to a limited partnership. The petition alleges that the trustees, after having turned effective control of the partnership over to Martin, without apparent benefit to the trusts for consideration of any alternatives that would have allowed them to retain control of a valuable trust asset while insulating the trusts from personal liability, also relinquished to him the administration of trust property. It is alleged, for instance, that the trustees abdicated trust investment policy to Martin, who pursued a course of investing which favored the income beneficiary over the principal beneficiaries. Martin, who, from the date of the testator's death, managed the family business, the Forty-Second Street Company, first as general manager and after Harry's death, as the dominant general partner, is alleged

to have utilized control over the partnership for the diversion of trust assets.

While the trustees deny the allegations they do not challenge petitioners' right to seek their removal for self-dealing, and for the mismanagement, waste and diversion of trust assets. Rather, they argue that, even assuming the truthfulness of the allegations, in large part, the wrongful acts with which the general partners and they are charged would affect only trust income, and that, thus, petitioners, possessing only an interest in the trust corpus, have not been damaged and lack standing to complain. They ask, therefore, that all references to misconduct relating to income be stricken.

The claim that in furtherance of the conspiracy the trustees converted the testator's interest in the partnership from a general partnership interest to a limited partnership interest appears to be of dubious validity. Indeed, article XV of the original 1961 limited partnership agreement provided for continuation of the partnership upon the death of a general partner, with the deceased partner's participation being converted to a limited partner's interest should his estate agree to continue in the partnership. The trustees apparently pursued the prudent course by foregoing whatever leverage they had to insist upon a general partnership, and therby expose the trusts to unlimited liability, and accepting, instead, a limited liability position as a limited partner. But petitioners argue that as part of the agreement, the trustees consented to a continuation of the partnership after Harry's death with Martin and Richard as the general partners, instead of insisting upon its liquidation, and that a substantial offer, which was rejected, was made for the purchase of the partnership. They allege further that the profits of the partnership have been steadily declining since 1969 with the result that the partnership is no longer saleable. The unmarketability of the partnership would, of course, diminish the value of the trusts' capital investment and be a proper concern to the principal beneficiaries of the trust.

In addition to those already mentioned, other specific acts alleged involving the trustees include the gratuitous pay-

ment of a brokerage commission to Martin, who is not a licensed real estate broker, on the sale of trust-owned realty; the pursuit of an investment policy limited almost exclusively to municipal bonds whose income is not subject to income tax but whose value, to the detriment of the remaindermen, is not only not likely to appreciate, but is subject to the erosion of inflation; the use of corporate funds in which the trusts have equity interests to make interest-free loans to other corporations in which the trustees and their families have an interest; and the failure to oversee the proper administration of the partnership and to protect a substantial asset of the trusts. In connection with the latter, petitioners complain of the payment of substantial amounts to Richard in the guise of booking fees for motion pictures exhibited by the partnership. Martin's salary from the partnership is alleged to have increased from an average of $60,000 in the 1965-1971 period to $90,000 in the 1972-1977 period, while the partnership's annual net profits dropped precipitously from $1,253,000 in 1970 to $638,924 in 1975 to $97,826 in 1977. Petitioners complain that significantly lower salaries were shown on the financial statements furnished the trustees, and that the additional payments were disguised under such entries as "office services" or "professional fees". They allege further that Samuel Levine, husband of one of the trustees and holder himself of a small limited partnership interest, received a $14,000 salary from the partnership from 1968 through 1976.

It is axiomatic that " 'a person who undertakes to act for another in any matter shall not, in the same matter, act for himself.' " (Dutton v Willner, 52 NY 312, 318-319; cf. Wendt v Fischer, 243 NY 439; Munson v Syracuse, Geneva & Corning R. R. Co., 103 NY 59, 73-74.) "A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior * * * Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd." (Meinhard v Salmon, 249 NY 458, 464.)

■ The acts of self-dealing and other breaches of fiduciary duty alleged would, of course, if established, warrant the trustees' removal, irrespective of whether petitioners'

beneficial interests were affected. (3 Scott, Trusts [3d ed], § 200, p 1641; cf. *Matter of People* [*Bond & Mtge. Guar. Co.*], 303 NY 423, 431; *Munson v Syracuse, Geneva & Corning R. R. Co.*, 103 NY, at p 74.) Thus, the allegations of misconduct, even if they relate to matters which affect only income, are relevant to the claims of breach of fiduciary duty and should not be stricken.

As already noted, however, not all of the allegations of misconduct relate to income. In addition to the allegations of conversion of the trusts' partnership interest, the charge that the assets of the Share 2 Trust were improperly diverted to the Share 1 Trust also relates to trust principal, as is the allegation that the income beneficiary was favored over the principal beneficiaries.

Petitioners, alleging a conspiracy between the trustees and the general partners to utilize the control of the partnership for the diversion of trust assets, seek, in addition to the trustees' removal, an accounting and restoration to the trusts of amounts illegally diverted therefrom by Martin and Richard. Although factually interrelated to the allegations concerning the conduct of the partnership, these claims stand on their own, separate and apart from the claims relating to partnership mismanagement. For instance, petitioners claim that Martin, although not even a nominal trustee, acted, *de facto*, as the sole trustee through his control of the partnership. In fact, so complete was Martin's control over the trusts, according to petitioners, that the trustees acted merely as passive conduits of funds and recipients of unearned salaries and commissions.

"Any one who knowingly participates with a fiduciary in a breach of trust is liable for the full amount of the damage caused thereby to the *cestuis que* trust." *(Wechsler v Bowman*, 285 NY 284, 291, mot to amd remittitur on other grounds granted 286 NY 582; see *Lonsdale v Speyer*, 249 App Div 133; see, also, *Jacobellis v Prudential Ice & Coal Corp.*, 244 App Div 255, mod 269 NY 632; *Mack v Latta*, 178 NY 525, 532; 5 Scott, Trusts [3d ed], § 506, p 3568.) Thus, to the extent that Martin and Richard are alleged to have participated in a diversion or waste of trust assets, the petition asserts claims cognizable by the Surro-

gate's Court. (See *Matter of Rothko,* 69 Misc 2d 752, affd 40 AD2d 1083.) Other than as noted, we need not and do not pass on the merits of these or any of the claims asserted since all that is before us on these motions is the sufficiency of the pleadings.

We note also that the alleged wrongs committed against the trust, viz., diversion of trust assets by the trustees and the general partners, the relinquishment to Martin of the power to invest trust funds, the payment of an illegal brokerage fee to Martin and the extension of loans without interest, are claims personal to the trusts, not petitioners individually. Petitioners argue, however, that they have a right to sue derivatively for the benefit of the trust because the trustees, who have conspired with Martin and Richard, obviously cannot be expected to seek redress against themselves and the general partners on behalf of the trusts.

"[I]ndependently of [statutory] provisions" *(Brinckerhoff v Bostwick,* 88 NY 52, 59) and "upon the general principles of equity" *(Robinson v Smith,* 3 Paige Ch 222, 232) *cestuis* have the right to sue on behalf of the trusts for a cause of action belonging to the trust if "the trustees refuse to perform their duty in that respect". *(Western R. R. Co. v Nolan,* 48 NY 513, 518; see *Riviera Congress Assoc. v Yassky,* 18 NY2d 540, 547; *Bonham v Coe,* 276 NY 540; *Matter of Straut,* 126 NY 201, 212.) The Court of Appeals has noted that "the derivative suit is, in effect, 'a combination of two causes of action'—one against the trustees for wrongfully refusing to sue and the other against the party who is liable to the trust." *(Riviera Congress Assoc. v Yassky,* 18 NY2d, at p 547, citing *Koral v Savory, Inc.,* 276 NY 215, 218.)

Petitioners, in behalf of the trusts, also seek to charge Martin and Richard for the waste and diversion of partnership assets which followed the transfer to them of control of the partnership, a valuable trust asset. In essence petitioners claim that by such waste and diversion Martin and Richard have diminished the partnership's value as an ongoing enterprise, and as a result have lessened the value of the trusts' principal interest therein. This claim, of course, brings into sharp focus the question of the jurisdiction of the Surrogate's Court over claims involving the management of the partnership.

On this question the Surrogate, recognizing it to be a "difficult issue", found that the general partners' diversion of income would have an effect upon the value of the partnership which, in turn, would affect the value of trust principal. Thus, the court, citing *Matter of Rothko (supra)* as a precedent for the exercise of jurisdiction in such a case, found that the claims against Martin and Richard related to the affairs of a decedent and hence were cognizable by the Surrogate's Court. More specifically, the court stated that it chose to exercise its jurisdiction to require a partnership accounting by the general partners to the trusts, a limited partner.

The challenge to the jurisdiction of the Surrogate's Court to entertain the claims relating to the management of the partnership is based on the premise that Martin and Richard hold their positions as general partners in their individual capacities, and not as executors or trustees of the testator's estate. Thus, they argue, the affairs of the partnership are not subject to the scrutiny of the Surrogate's Court, a court of limited jurisdiction.

The Surrogate's Court has been granted "full and complete general jurisdiction in law and in equity to administer justice in all matters relating to [the] estates and the affairs of decedents". (SCPA 201, subd 3; see NY Const, art VI, § 12, subd d.) "[W]here an estate fiduciary is a controlling stockholder in a corporation by reason of holding such stock in a fiduciary capacity, he can be compelled to disclose the details of the corporate activities". *(Matter of Sylvester,* 5 AD2d 970.) In such circumstances the corporation and the estate may be regarded as a single entity. But where the corporation and the estate are not identical, the corporate form may not be disregarded as a mere cloak concealing the estate, nor the assets and business of the corporation treated as those of the estate. *(Matter of Auditore,* 278 NY 234.)

In *Matter of Liebowitz* (34 AD2d 750), the beneficiaries of an estate whose most valuable asset was ownership of nonvoting stock in a certain corporation were dissatisfied with the corporation's dividend policy. An executor of the estate personally owned one half of the voting stock. The

other half was owned by a relative not involved in the proceeding. In holding that the Surrogate's Court lacked jurisdiction over the executor with respect to the corporation's dividend policy, this court noted (p 750) : "It is perfectly clear that what executive control of the corporation [the executor]exercise[d] does not stem from the stock owned by him in a fiduciary capacity, either as executor or trustee. It follows that the corporation and the estate cannot be regarded as a single entity and that the Surrogate's Court has no jurisdiction over the management of the corporation".

In *Matter of Sylvester* (5 AD2d 970, *supra)*, the executrix, although owning 50% of the corporation's stock in her individual right, did not hold any corporate stock in a fiduciary capacity and the business of the corporation had never been conducted as an estate asset. This court refused to compel a corporate accounting, and noted (p 970) that "any remedy which the objectant minority stockholder wishes to pursue regarding the operations of the corporation should be sought in the Supreme Court in a proper action."

On the other hand, in *Matter of Rothko* (69 Misc 2d 752, *supra)*, we sustained the Surrogate's Court's exercise of jurisdiction over third parties which had purchased estate assets. There, heirs of a renowned artist, alleging a conspiracy to defraud, sought to rescind a contract entered by the executors for the sale of the testator's paintings, the principal assets of the estate; to revoke letters testamentary; to enjoin the disposition of various paintings; and to compel an accounting for the profits received from sales of the paintings. Noting that it had jurisdiction to review charges of self-dealing by the executors, which, if sustained, would avoid the contracts, the court also concluded that it had jurisdiction to award relief against the contracting corporations, because contracts for the sale of estate assets, alleged to have been fraudulently made by the executors with third parties, relate to the affairs of a decedent and the administration of his estate. The court found (p 757) that the legislative history of SCPA 201 "points toward broad jurisdiction in the Surrogate's Courts to avoid the expense

and delay of multiple suits" and held that it had full legal and equitable jurisdiction to hear and dispose of the matter in its entirety.

Of course, in *Rothko* (69 Misc 2d 752, *supra*), the claim that third parties had fraudulently contracted for the purchase of estate assets was directly related to both the affairs of the decedent and the administration of his estate. (SCPA 201; NY Const, art VI, § 12, subd d.) Here, in contrast, the general partners are asked to account for their conduct of the business operations of a partnership, neither an asset of, nor controlled by, the estate, on the ground that any diminution of the value of the partnership as a result of the waste and diversion of its assets would similarly affect the interest of the trusts, which are an estate asset. Thus, the wrongs alleged affect the partnership directly and the trusts only indirectly. This raises the subsidiary question of whether a claim for the waste and diversion of partnership assets belongs solely to the partnership itself, which is neither a fiduciary nor beneficiary of the estate, or to the limited partner, the trusts, which is a beneficiary. Thus, the issue of the jurisdiction of the Surrogate's Court over the general partners with respect to the claims relating to the management of the partnership turns largely on whether petitioners, either individually or in behalf of the trusts, have standing to complain of the general partners' alleged acts of waste and diversion of partnership assets.

We believe that the *Rothko* doctrine is applicable to the circumstances presented here, and that the Surrogate's Court should retain jurisdiction over the entire matter to provide a single forum for resolution of the claims, inextricably interwoven, against both the general partners and the trustees. Concededly, Martin and Richard do not derive their control over the partnership from positions as fiduciaries of the estate, and, thus, the traditional basis of Surrogate's Court jurisdiction over the nonfiduciary or non-beneficiary partnership or corporation is not available. Yet, the thrust of the petition is that the general partners are impairing the value of the trust corpus by their waste and diversion of partnership assets and that, in failing to sue them, the trustees have been guilty of a dereliction of duty.

The latter aspect of the claim is obviously one over which the Surrogate's Court has jurisdiction, and it furnishes a sufficient nexus to the operation of the partnership to justify jurisdiction by the Surrogate's Court over the entire matter.

We are also of the view that the trusts, as a limited partner, have standing to complain of a waste and diversion of partnership assets which results in a diminution of the value of the partnership itself with consequent effect upon the trusts' interest therein. Even the diversion of partnership income would have an effect upon the trusts' capital interest in the partnership. The precipitous decline in partnership profits has admittedly affected the financial viability of the partnership and, if unchecked, could lead to insolvency and the ultimate loss of the trusts' capital investment. Moreover, if partnership earnings have been substantially reduced by a diversion of income and the payment of unearned salaries to Martin, Richard and the trustees and their families, as asserted, the market value of the partnership and the price for which it would be sold would be affected. As *cestuis* petitioners may sue derivatively in behalf of the trusts if the trustees refuse to perform their duty. *(Western R. R. Co. v Nolan*, 48 NY 513, 518, *supra.)*

Martin and Richard argue, however, that any claims arising out of their alleged wrongdoing as general partners, even if the effect of that wrongdoing would be the diminution in value of the trusts' capital interest in the partnership, must be asserted derivatively on behalf of the partnership in accordance with section 115-a of the Partnership Law. In urging this point they cite *Strain v Seven Hills Assn.* (75 AD2d 360, 371), wherein this court stated: "[A] limited partner's power to vindicate a wrong done to the limited partnership and to enforce redress for the loss or diminution in value of his interest is no greater than that of a stockholder of a corporation. As a general proposition, where a corporation suffers loss because of the acts of officers, directors, or others which diminish or render valueless the shares of stock of a stockholder, the stockholder does not have a direct cause of action for such damages, but has a derivative cause of action on behalf of the corporation to recover the loss for the benefit of the corporation".

It should be noted that the petition does not plead a derivative claim in behalf of the partnership, although it may fairly be construed to plead a derivative claim in the trusts' behalf for an accounting. Nor did the Surrogate find that the petition pleaded a derivative action in behalf of the partnership.

Unknown at common law and "exclusively a creature of statute * * * first recognized in this State in 1822 (Laws of 1822, ch. 244)" *(Lanier v Bowdoin,* 282 NY 32, 38), the limited partnership resembles a corporation more closely than it does an ordinary partnership *(Lynn v Cohen,* 359 F Supp 565). For instance, a limited partner is exempt from partnership obligations. (Partnership Law, § 90.) "Statutes permitting limited partnerships are intended to encourage investment in business enterprise by affording a limited partner a position analogous to that of a corporate shareholder." *(Ruzicka v Rager,* 305 NY 191, 197-198.) "The object to be accomplished * * * is to protect the special partner and exempt him from a general liability and to place his capital alone at the peril of the business." *(Casola v Kugelman,* 33 App Div 428, 433, affd 164 NY 608.)

Because of this special position, akin to that of the corporate shareholder, a limited partner "is not a proper party to proceedings by or against a partnership, except where the object is to enforce * * * [his] right against or liability to the partnership". (Partnership Law, § 115.) Moreover, a limited partner is only entitled "to inspect and copy" the partnership books, to demand "a formal account of partnership affairs", to participate in "dissolution and winding up", and "to receive a share of the [partnership] profits". (Partnership Law, § 99.) The Court of Appeals has held that these restrictions on a limited partner's right to sue are intended "solely to restrain limited partners from interfering with the right of the general partners to carry on the business of the partnership" *(Riviera Congress Assoc. v Yassky,* 18 NY2d, at p 547; see *Lichtyger v Franchard Corp.,* 18 NY2d 528, 535), and do not bar a limited partner either from suing derivatively to enforce a partnership claim where the general partners wrongfully refuse to do so *(Riviera Congress Assoc. v Yassky, supra;*

Partnership Law, §§ 115-a, 115-c [L 1968, ch 496, eff June 5, 1968]) or bringing a class action where only the interests of the limited partners have been prejudiced as in the case of a reduction in the rate of return on their investments *(Lichtyger v Franchard Corp., supra).*

The principle is equally well established that a managing or general partner of a limited partnership is bound in a fiduciary relationship with the limited partners.* *(Riviera Congress Assoc. v Yassky,* 18 NY2d, at p 547; see *Meinhard v Salmon,* 249 NY 458, *supra.)* "[T]hose in control of a business must deal fairly with the interests of the other investors and this is so regardless of whether the business is in corporate or partnership form." *(Lichtyger v Franchard Corp.,* 18 NY2d, at p 536; *see Leibert v Clapp,* 13 NY2d 313; *Meinhard v Salmon, supra.)* The stockholders or limited partners are *cestui que trusts* and "no injury * * * [they] may sustain by a fraudulent breach of trust, can, upon the general principles of equity, be suffered to pass without a remedy." *(Robinson v Smith,* 3 Paige Ch 222, 232, *supra.)* Thus, the right of a limited partner to an accounting has been upheld. "[T]he partnership business could properly be conducted by the general partners only, and although the special partner could not, without becoming a general partner, participate in the conduct of the business, [he has] an interest in the partnership property and business, and for that purpose and to compel the general partners to account [he has], as between them, the same rights they [have]." *(Van Voorhis v Webster,* 85 Hun 591, 594; see *Fifth Ave. Bank v Colgate,* 120 NY 381; *Continental Nat. Bank of Boston v Strauss,* 137 NY 148.)

■ Whatever confusion exists concerning a limited partner's right to an accounting (see 43 NY Jur, Partnership, § 296) apparently arises from dictum in *Union Circulation Co. v Hardel Publishers Serv.* (6 Misc 2d 340). Even there, however, the court, although noting that a limited partner was not in a fiduciary relationship to third parties or in his duties to the general partner, nevertheless denied a motion

---

* The fiduciary relationship, which demands " 'utmost good faith, fairness, loyalty' " is also extended to a withdrawn general partner. (See *Newburger, Loeb & Co. v Gross,* 563 F2d 1057, 1078.)

to strike a counterclaim seeking an accounting. We are not aware of any decision which has refused to grant a limited partner an accounting, whether the accounting was sought by a retiring limited partner, or by one who, alleging improprieties, is interested only in protecting the value of his interest in the partnership. Under the statute the only criterion for a formal accounting is that "circumstances render it just and reasonable". (Partnership Law, § 99, subd [1], par [b].) Thus, regardless of the similarities between a corporation and a limited partnership, as noted above, we do not believe that a limited partner can be deprived of his statutory right to a formal account of partnership affairs.

With respect to the claims against the general partners the Surrogate should preliminarily explore the issue whether a partnership accounting is warranted and, if circumstances indicate the appropriateness of such an accounting now, then an interlocutory judgment may be entered to that effect, before the court and the parties investigate and consider the issues that would arise on an accounting. (See, e.g., *Bassett v American Meter Co.*, 20 AD2d 956, 957.)

Appellants also object that the petition lacks specificity and fails to meet the requirement of CPLR 3013 and 3014 and SCPA 302 (subd 2) that a pleading be sufficiently particular to give the court and parties notice of the claim and that it contain plain, concise statements in consecutively numbered paragraphs, each containing a single allegation. More specifically, respondents point to the incorporation by reference in a single paragraph of the petition of a 36-page attorney's affidavit submitted in the earlier proceeding in opposition to the trustees' intermediate accounting, which affidavit furnishes substantially all of the specific instances of misconduct. We note, however, that in spite of these pleading deficiencies, the trustees and general partners have answered the petition. Of a more serious concern, especially in view of the tenuous nexus between the specific instances of alleged wrongdoing pleaded and the broad conclusory allegations of waste, misappropriation and breach of fiduciary duty, is the objection that petitioners have failed to comply with the requirement of CPLR 3016 (subd [b])

that, in pleading a cause of action in fraud or breach of trust, the circumstances thereof shall be stated in detail. On balance, we believe, nevertheless, that the allegations of fraud are pleaded with sufficient detail.

We are aware, moreover, that this is a complex lawsuit, likely to be prolonged, as well as vigorously litigated at every stage. Although, in other circumstances, we might be disposed to require petitioners to replead, we believe that the Surrogate will be able to maintain control of this litigation. The court can assure clarification of the issues through the use of discovery devices, and, if necessary, ultimately dispose of the issues by separate trials.

We have examined appellants' other points and find that they are without merit.

Accordingly, the order of the Surrogate's Court, New York County (MIDONICK, J.), entered September 5, 1980, should be affirmed without costs or disbursements.

ROSS, CARRO, SILVERMAN, and BLOOM, JJ., concur.

Order, Surrogate's Court, New York County, entered on September 5, 1980, affirmed, without costs and without disbursements.