■ In the Matter of the Estate of IRVING MILLER, Deceased. MARGOT M. JACOBS et al., Appellants; EDWARD LEE et al., Respondents, et al., Objectants. — In a proceeding, *inter alia,* for a final judicial settlement of the accounts of the trustees of the testamentary marital and nonmarital trusts of Irving Miller, deceased, objectants Margot M. Jacobs and Renee M. Tyroler appeal from so much of an interlocutory decree of the Surrogate's Court, Nassau County (Radigan, S.), dated December 3, 1982, as (1) dismissed certain objections to the final and supplemental account of the trustees, viz., objection "1 (b)" that the trustees improperly computed commissions due them and objection "1 (c)", that trustee Edward Lee received excessive commissions pursuant to an invalid private agreement with trustee Mildred L. Miller and (2) determined that the exercise by Mildred L. Miller of her general power of appointment in the residuary clause of her will did not effect a merger of the appointive fund with her estate. Interlocutory decree modified, on the law and the facts, by (1) deleting that portion of the first decretal paragraph which dismissed objection "1 (b)" and (2) deleting the fourth decretal paragraph and substituting therefor a provision that the exercise of the general power of appointment by Mildred L. Miller in the residuary clause of her will did effect a merger of the appointive fund with her estate. As so modified, interlocutory decree affirmed insofar as appealed from, without costs or disbursements, and matter remitted to the Surrogate's Court, Nassau County, for further proceedings consistent herewith. Irving Miller died a resident of Nassau County on March 25, 1958. He was survived by his widow, Mildred L. Miller, a son, Irwin Miller, and two daughters, Renee M. Tyroler and Margot M. Jacobs (nee Margot R. Miller). Irving Miller's will, drafted by attorney Edward Lee, included several provisions pertinent here. Section C of article 1 provided that "[a]ll laws referred to in this Will shall, unless otherwise indicated, refer to said laws as they exist at the time of my death". Articles 9 and 10 created marital and nonmarital trusts. Mildred Miller was the income beneficiary of the marital trust for life and was granted "the power by Will to appoint all property and the entire interest in such Marital Trust to and in favor of herself, her estate, or either, and/or to and in favor of any person or persons whatsoever". Income from the nonmarital trust was payable during Mildred Miller's life to the testator's three children, with the principal payable equally to them upon Mildred's death. Section A of article 15 provided that the executors and trustees (omitting individuals who died before Irving) were Mildred Miller, Edward Lee, Samson Rosenblatt, and Irwin Miller, who was not to qualify until he reached the age of 30. Section B of article 15 provided that "[a]s trustees each of them shall be entitled to one-half the full compensation for receiving and paying out principal and annual additional principal commissions and for collecting and distributing income allowed by law to a sole trustee". The trustees agreed to be bound by this provision as a condition for qualifying. Section F of article 16 allowed the trustees "[t]o maintain a security safekeeping account * * * to employ investment counsel * * * to employ clerical help and certified public accountants; and to pay reasonable fees therefore". Section G of article 15 provided that a fiduciary attorney could be paid for legal services without court approval in amounts approved by the other fiduciaries. Intermediate accounts for both trusts were filed and judicially settled for the period from their inception to July 31, 1963. The trustees had retained an accounting firm to prepare financial schedules for the annual reports and the fiduciary income tax returns for both trusts for the years 1959 through 1964. In 1964, each of the trusts paid $400 to this firm from income. In addition, each of the trustees received commissions up until 1964 at the rate of one half the full commissions then allowed by law. By letter dated December 14, 1964, Lee, Mildred Miller and Rosenblatt, then the only trustees, agreed

that the trustees would dispense with the services of the accounting firm and that Lee's firm would thereafter perform these services. The agreement provided: "In respect of the Non-Marital Trust, of which Renee Tryoler, Margot R. Jacobs and Irwin Miller are the income beneficiaries, it is agreed that my firm will receive no fee as such for its services heretofore rendered and for the additional services referred to in the second previous paragraph. It is further agreed that Mildred will receive and retain only one-third of the annual commissions allowed by Irving Miller's Will, and that she will cause to be paid to me two-thirds of the annual commissions in the amount allowed by Irving Miller's Will, which I shall retain in addition to the annual commissions receivable directly by me in the amount allowed by said will. The commissions to be received by Samson will not be affected by this arrangement. The foregoing affects only annual commissions and compensation to our firm for the administrative matters heretofore discussed and such legal services as are involved in preparing income tax returns and annual statements for the trustees. It does not affect the commissions allowable to trustees for paying out all sums of money constituting principal as now set forth in paragraph '1' of SCA section 285-b, or legal services that may hereafter be required in addition to those hereinbefore mentioned". Mildred Miller died on April 23, 1978. The ninth article of her will provided with respect to the residue of her estate: "including any lapsed legacies and any property over which I may have a power of appointment or testamentary disposition at the time of my death (referring specifically to the power of appointment given to me under the Will of my late husband, Irving Miller, and which power of appointment I intend herein to exercise), all of which is sometimes hereinafter referred to as my 'residuary estate' shall be divided into two (2) equal parts to be distributed as follows: A. I devise and bequeath one (1) such part to my daughter, RENEE TYROLER, *per stirpes;* B. I devise and bequeath one (1) such part to my daughter, MARGOT JACOBS, *per stirpes*". After Mildred Miller's death, her executors, Lee, and Rosenblatt filed final accounts for both trusts for the period July 31, 1963 through April 23, 1978, and supplements thereto for the period up until December 31, 1979. These accounts were adopted by Irwin Miller for the period during which he served as a trustee. After Rosenblatt's death these proceedings were continued by his executors. In October, 1981, Margot Jacobs and Renee Tyroler filed objections to the final and supplemental account of the trustees. In their objection designated "1 (b)" they alleged that the trustees paid to themselves excessive commissions by failing to limit these commissions to one half the rates in effect at the time of the testator's death. Apparently, each time the Legislature increased the rates of annual commissions, the trustees applied the new rates prospectively to commissions thereafter payable. The basis of objection "1 (c)" was that Lee received excessive commissions from the nonmarital trust pursuant to the private agreement. The objectants complained that there was no court order and that the work performed by Lee and his staff consisted of the normal duties of a trustee. In their fourth objection, the objectants disputed supplemental schedules A-1 and B in their entirety. Schedule A-1 was a "Statement of Increases on Sales, Liquidation, Collection, Distribution or Uncollectibility", while schedule B was a "Statement of Decreases Due to Sales, Liquidation, Collection, Distribution or Uncollectibility". The objectants complained that the sales set forth should not have been made by the trustees and that the assets involved should have been distributed to the estate of Mildred Miller. They sought to surcharge the trustees for making the sales without court order and without their consent. The Surrogate concluded, with respect to objection "1 (b)", that the trustees were entitled to receive annual principal commissions using rates in effect on the dates of payment. We disagree. Trustees are generally entitled to commis-

sions at such rates (*Matter of Knowles,* 101 NYS2d 601; *Matter of Bank of New York* [*Friberg*], 199 Misc 593, 598; cf. *Matter of Barker,* 230 NY 364, 372). However, the testator's clear intention to withhold the usual commissions will govern, although testamentary provisions will not be construed as depriving a fiduciary of the right to compensation if they may reasonably be construed otherwise (*Matter of Cohen,* 128 Misc 906, 908; *Matter of Langley,* 39 Misc 2d 419, 421). It is the objectants' burden to establish that trustees are to be compensated for their services at rates other than those specified by law at the time of their account (*Matter of Tuckerman,* 60 NYS2d 728, 738). The objectants herein have met that burden. Our construction of section c of article 1 of Irving Miller's will, which provides that "[a]ll laws referred to in this Will shall, unless otherwise indicated, refer to said laws as they exist at the time of my death" mandates the conclusion that the trustees improperly took commissions at an unlawful rate when they increased the rate of these commissions according to new legislative formulas in 1969 and 1976 (see SCPA, 2309, subd 2). The matter must therefore be remitted for a determination as to the surcharge to be imposed with respect to the receipt of commissions at excessive rates. However, we agree with the Surrogate's ruling that the 1964 agreement between the trustees is not invalid. It is the objectants' contention that the effect of this agreement was that Mildred Miller either waived her right to receive two thirds of the nonmarital trust commissions to which she was otherwise entitled or that these commissions were assigned to trustee Lee. They also claim that as the other trustees under the agreement continued to receive their full half share of commissions from the nonmarital trust, the private apportionment among the trustees was not made according to the services rendered and that any extra services Lee may have performed were those which trustees would normally be expected to perform. We note that a waiver of commissions is to inure only to the benefit of the trust (*Matter of Blumenstock,* 125 NYS2d 812) and that public policy in effect in 1964 prohibited the assignment from one fiduciary to another of commissions until authorized by the court (*Matter of Worthington,* 141 NY 9; see, also, *Matter of Hayden,* 172 Misc 669, 675; *Matter of Macy,* 53 NYS2d 362). However, these cases do not preclude a finding that the agreement was valid. In the matter at bar, the trustees agreed that Lee's firm was to receive $400 additional compensation per year from the marital trust and two thirds of the commissions from the nonmarital trust which would otherwise have been payable to Mildred Miller. The amount of $400 was exactly that amount being charged by a certified public accountant to each trust for keeping the trust's financial records and preparing the fiduciary income tax return. Lee's firm was to (and apparently did) provide these services from 1965 onward. The objectants' contention that the extra services performed by Lee were those which trustees would normally be expected to perform is incorrect and belied by the record. Section B of article 15 of the testator's will states that the trustees' commissions were for "receiving and paying out principal * * * and for collecting and distributing income". The additional work performed by Lee was of an accounting nature. Section F of article 16 specifically provided that the trustees might employ certified public accountants and pay them a reasonable fee. The net result was that Lee provided extra services which the will contemplated would be the basis for compensation. The nonmarital trust was benefited to the extent that the certified public accountant would have charged for providing these services since 1965. The ultimate beneficiaries were (and are) the objectants, who now seek to surcharge Lee and essentially to be doubly rewarded. The agreement might also be viewed as one on the part of Mildred Miller to compensate Lee personally for the rendition of his services. Under such an arrangement, she would have received her full (one half) commission

and then paid two thirds of that amount to Lee. The objectants could not then be heard to complain of such an agreement, which would have yielded the same result as paying Lee directly. In addition, the SCPA was amended in 1976 to permit commissions to be apportioned by agreement among multiple trustees according to the services they actually rendered (L 1976, ch 303, § 3). Thus, the agreement between Lee and Mildred Miller was not violative of public policy, in that this new provision merely recognizes that trustees are the proper persons to apportion commissions based upon the actual services rendered. Finally, the Surrogate held that Mildred Miller's exercise of her general power of appointment in the residuary clause of her will did not effect a merger of the assets of the marital trust with those of her estate. This conclusion was erroneous. Article 9 of her will clearly indicates that she intended that the power of appointment be executed in favor of the residuary beneficiaries, objectants Tyroler and Jacobs. Mildred Miller therefore provided that the general testamentary power merge with her estate (cf. *Matter of Colley,* 134 NYS2d 99, 102; *Matter of Smith,* 79 Misc 2d 105, 107; see, also, *Matter of Moffat,* 49 Misc 2d 136, 138). Thus, the matter must also be remitted to determine the amount of surcharge, if any, arising from the trustees' withholding the assets of the marital trust from Mildred Miller's executors. Mollen, P. J., Weinstein and Rubin, JJ., concur.

Brown, J., concurs in part and dissents in part, with the following memorandum: While I am in agreement with my colleagues with respect to the other issues presented on this appeal, I do not share their view that the rate at which the trustees herein are to be compensated is to be fixed by reference to the statutory rate of compensation in effect at the time of the testator's death. I would argue that the Surrogate correctly concluded that the trustees are entitled to the greater fee allowed under the legislation enacted subsequent to the testator's death and in effect at the time such fees became payable (SCPA 2309). As the majority notes, the general rule is that commissions to be paid testamentary trustees are determined by the rate in effect at the time of payment (*Matter of Bank of New York* [*Friberg*], 199 Misc 593; *Matter of Knowles,* 101 NYS2d 601; cf. *Matter of Barker* 230 NY 364). The burden was upon the objectants to establish that the testator intended that the trustees be compensated in some other fashion (*Matter of Tuckerman,* 60 NYS2d 728). The provisions of section B of article 15 of the will set forth the testator's desire that the trustees be compensated at a lesser rate than that allowed by law to a sole trustee. However, the will does not similarly indicate that the testator intended to *further* reduce the amount of the trustees' compensation by requiring that it be calculated in accordance with the statutory rate in effect at the time of his death. The boilerplate language set forth in section C of article 1 of the will to the effect that "[a]ll laws referred to in this Will shall, unless otherwise indicated, refer to said laws as they exist" at the time of the testator's death does not establish a contrary intention. Rather, I would agree with Surrogate Radigan's interpretation that the language used by the testator in providing for the trustees' compensation "appears to circumscribe the limitations on commissions to those specifically appearing in the commission section of will". "The intention of the testator to withhold the usual commissions from [a fiduciary] must be in language that can be clearly interpreted, for testamentary provisions will not be construed as depriving the executor of the right to compensation if they may be construed otherwise with equal reason" (*Matter of Cohen,* 128 Misc 906, 908; see, also, *Matter of Langley,* 39 Misc 2d 419, 421). In my judgment, absent clear specific language within the section on commissions indicating an intent to further limit the trustees' compensation by imposing the rate in effect on a particular date, there is "equal reason" (*Matter of Cohen, supra*) to construe the will to provide that the rate of the commissions

784

shall, according to the general rule, be that which is in effect at the time of payment (*Matter of Bank of New York [Friberg], supra; Matter of Knowles, supra*).