(June 6, 1991)

■ In the Matter of the Estate of KHEDOURY A. ZILKHA, Deceased. LEILA SEROUSSI et al., Appellants-Respondents; EZRA K. ZILKHA et al., Respondents-Appellants. In the Matter of the Estate of KHEDOURY A. ZILKHA, Deceased. LEILA SEROUSSI et al., Appellants-Respondents; EZRA K. ZILKHA et al., Respondents-Appellants.—Order, Surrogate's Court, New York County (Marie Lambert, S.), entered September 13, 1989, which, *inter alia,* granted respondents' motion to dismiss petitioners' application to compel respondents, trustees of the marital trust under the will of Khedoury A. Zilkha, to account for the period prior to September 1, 1973 or preclude petitioners from questioning the acts of respondents, as trustees, prior to that date, but granted petitioners' application with respect to the period commencing September 1, 1973, and denied respondents' motion to dismiss for lack of standing and on the basis of the applicable statute of limitations, unanimously affirmed, without costs or disbursements.

Petitioners, residuary legatees of 13.3% of the estate of their grandmother, Louise Zilkha, seek an accounting of the assets, consisting of one-half of the decedent's assets, both foreign and domestic, placed in a pre-residuary marital trust for her under the last will and testament of her husband, the decedent, Khedoury Zilkha, who died in 1956 and who, according to contemporary newspaper accounts, was the driving force behind a "network of nine financing and foreign exchange enterprises covering five continents", known as the House of Zilkha. The trustees, Louise and her two sons, Ezra and Selim, were given the power to invade the trust principal for Louise, the income beneficiary, who was given a general testamentary power of appointment over the trust's principal.

In 1957, the trustees decided to sell one of the trust assets, American Nile Corporation, a closely-held corporation, to the decedent's three sons and petitioned for judicial permission. As then required, all interested parties, including a special guardian for the infant contingent remaindermen, were notified. The court granted the petition and settled the account of the trustees. Subsequently, in 1973, Louise executed a waiver and release with respect to an intermediate accounting of the trust from 1957 through August 1973. Waivers and receipts and releases were exchanged.

Louise died on April 2, 1985 and, in her will, exercised her general testamentary power of appointment by directing that the assets of the trust "be distributed to my [e]xecutors to be disposed of as part of my estate under the terms of this [w]ill." Louise bequeathed 20% of the residue of her estate, including the property subject to the power of appointment, to the three children (two of whom are petitioners herein) of her deceased daughter, Berthie, and 40% to each of her two surviving daughters, Helene and Hanina, who are the executrices of her will. Louise expressly made no provision for her sons and their issue who were "otherwise amply provided for." Respondents have advised the executrices of Louise's will that the trust over which Louise had a power of appointment no longer has any assets. Thus, petitioners have received nothing for their 13.3% interest therein.

By a petition dated September 21, 1987, petitioners sought to compel the surviving trustees, Ezra and Selim, to account. By separate petition, they also sought information regarding the decedent's assets from the date of death to the present. Specifically, petitioners challenged the actions of the trustees, who have never accounted judicially and are alleged to have failed to marshal and account for decedent's interest in spe-

cific Zilkha companies and a Paris apartment, which, as part of the assets of the decedent's estate were potential assets of the trust and, in turn, part of Louise's residuary estate. The executrices have refused to join those proceedings or to take any action to compel their brothers, the trustees, to account. The respondent trustees moved to dismiss both proceedings. The Surrogate dismissed the petition to the extent it sought to reopen the prior judicial proceedings settling the trust, finding, *inter alia,* that Louise had participated in petitioning the court for permission to sell the shares of American Nile held by the trust to the trustees; that, as an executrix, she had participated in the filing of a final accounting of decedent's estate in August 1962, which accounting was judicially settled; that she, along with the other trustees, informally accounted for the period between May 31, 1957 to August 31, 1973 and exchanged receipts and releases; that Louise knew of the claims asserted herein and chose not to act on them even though she was the only party interested in the trust; and finally, that petitioners failed to demonstrate a basis to vacate the accounting decree. The court, however, held that petitioners have standing to compel an accounting and to require respondents to supply information concerning the assets and affairs of the trust for the period since September 1, 1973. In ruling as it did as to the period subsequent to September 1, 1973, the court, *sub silentio,* rejected respondents' arguments that petitioners lack standing to initiate these proceedings and that, in any event, they are barred by the statute of limitations. We affirm.

We agree essentially with the Surrogate's ruling that the 1962 decree settling the executors' accounts and the 1957 judicial order authorizing the sale of assets are final and binding on petitioners. The 1962 decree was entered only after review of a voluminous account and submission of a special guardian's report. The decree noted citation and proof of service to no less than 16 individuals, including petitioners' mother, aunts, uncles, cousins and the Attorney-General of the State of New York. The decree is, thus, *res judicata* as to the funding of the trust. So too is the court's December 6, 1957 order authorizing the sale of assets. *Res judicata* precludes relitigation by the parties to an action and their privies of any matters that were necessarily decided in the prior action. *(Matter of Shea,* 309 NY 605, 616.) As holder of the trust's general testamentary power of appointment, Louise actually represented the interests of all potential appointees, including petitioners. *(See, Matter of Levy,* 130 Misc 2d 370,

374.) Moreover, SCPA 315 (6) explicitly makes Surrogate's Court proceedings binding and conclusive on all potential appointees. Furthermore, as the Surrogate also correctly found, petitioners, as legatees of Louise, stand in her shoes and are estopped by her consent to, and participation in, the prior judicial proceedings and trust accounting they now seek to challenge. *(See, Matter of Allen,* 280 App Div 868, 869, *affd* 306 NY 720.)

With respect to the Surrogate's unexplained determination allowing the petitions to stand as to the period subsequent to September 1, 1973, respondents raise only the issue of petitioners' standing and the statute of limitations. As to the former issue, respondents argue that where, as here, a party has no direct legal interest in a trust that party may not commence a proceeding for an accounting or information. *(See,* SCPA 103 [39]; 2205.) In that regard, respondents claim, petitioners are neither beneficiaries of the decedent's will nor, since any interest they might have in the trust merged with the remainder of Louise's estate *(see, e.g., In re Camp's Estate,* 64 NYS2d 755, 756), beneficiaries of the trust created thereunder. In *Matter of Miller* (99 AD2d 780), however, where the donee had merged the property subject to her general testamentary power of appointment with her estate, the court, although it did not specifically discuss the issue of standing, upheld the objections filed by the residuary legatees of the donee's will to the computation of commissions under the donor's will. Petitioners are in a position similar to that of the residuary legatees in *Miller.* Moreover, since the executrices of Louise's estate refuse to do so, petitioners, as residuary legatees of the estate, have standing to compel an accounting and seek information regarding the assets and affairs of the trust. *(See, Matter of Brandt,* 81 AD2d 268.) Inasmuch as the executrices cannot adequately represent their interests, petitioners are not barred by any merger of their interest in the trust with the remainder of the estate from compelling an accounting of the trustees' activities since September 1, 1973.

Nor are petitioners barred, as claimed, by the running of the six-year statute of limitations (CPLR 213 [1]), since the statute does not begin to run with respect to assets never collected or previously accounted for by a fiduciary. "[T]he [s]tatute of [l]imitations does not commence to run in favor of a trustee until he openly repudiates the trust and asserts and exercises individual ownership over the trust property." *(Matter of Ashheim,* 111 App Div 176, 177, *affd* 185 NY 609.) In the case of an omitted asset, which is essentially what peti-

tioners are claiming here, since the trustees never acknowledged that it was part of the trust *res,* there obviously could have been no act of repudiation clearly made known to the beneficiaries. In that regard, we reject the argument that the statute of limitations began to run in 1980 when Louise received a bank statement showing that the trust's bank account had been exhausted and thus was on notice that the trust assets were fully depleted. This argument ignores the fact that the trust would still hold a one-half interest in each of the allegedly omitted assets. That the trust account had been depleted would not have exhausted the trust's interest in omitted assets. Thus, petitioners are not time-barred from requiring the trustees to account with respect to any omitted assets from the period beginning September 1, 1973. Concur—Murphy, P. J., Sullivan, Carro, Ellerin and Smith, JJ.