Scileppi, J.
On February 27, 1970, after three weeks of negotiations, respondents, as purchasers, and appellant, as seller, entered into a written agreement for the purchase and sale of a parcel of real property known as 40-51 61st Street, Woodside, New York. In accordance with the terms of the contract, respondents made a payment of $5,700 to the appellant on account of the purchase price. This sum, plus the net costs of title examination and survey, was made a lien on the property and was to be refunded to respondents in the event that appellant failed to perform. In the litigation before us, respondents have sought the recovery of same and have made a claim for counsel fees.
The contract for the sale of the property was prepared on a New York Board of Title Underwriters form and provided that the seller shall give and the purchaser shall accept a title such as any reputable title company would approve and insure. Title was to be conveyed by a bargain and sale deed free of all encumbrances, except those noted in the contract and free of all ‘ ‘ notes or notices of violations of law or municipal ordinances, *305 orders or requirements noted in or issued by the Departments of Housing and Buildings, Fire, Labor, Health, or other State or Municipal Department having jurisdiction against or affecting the premises at the date hereof Additionally, the sale and conveyance was made subject to two tenancies and appellant represented that he would serve a 30-day notice to terminate one of them. The contract expressly provided, in relevant part, that the sale and conveyance was subject to
‘ ‘ 4. Covenants, restrictions, utility agreement and easement of record, if any, now in force, provided same are not now violated.
‘ ‘ 5. Any state of facts an accurate survey may show, provided same does not render title unmarketable.”
After the execution of the contract, respondents retained the Inter-County Title Guaranty and Mortgage Company, a reputable insurance company, to search and insure title. During the course of the search, the title company found the existence of a recorded telephone easement and a “ Waiver of Legal Grades ” restrictive covenant, made between the City of New York and appellant’s predecessor in title in 1967, when the latter sought permission to install 25.02 feet of sidewalk in front of the property. It appears that the then owner Avished to construct a sidewalk on a level Avith the sideAvalks on either side of the property. This level was approximately one foot below the “legal grade” for these properties and construction of the sidewalk below ‘ ‘ legal grade ’ ’ Avas necessary to prevent the hazardous condition that would result if the sidewalk in front of the subject property was placed one foot higher than surrounding property. The city granted permission and a certificate of occupancy in exchange for the promise of the then owner, his successors and assigns, to install a sidewalk in accordance with the legal grade “ at any time hereafter as the Commissioner of Highways may direct ”. As a result of this search, the title company reported that appellant had a good and marketable title which it would approve and insure, but excepted the telephone easement and “Waiver of Legal Grades” covenant from coverage. Subsequently, the title company reported that there had been no violation of the terms of either the easement or the restrictive covenant.
*306 Investigation also revealed a survey of the property which was made in 1967 indicating the grades and elevations. This survey was filed by the builder’s architect with the Department of Buildings of the City of New York and had been approved by that department. The survey showed the 25.02 feet of sidewalk at a grade of 55.72 feet while the “ legal grade ” ranged from 57.13 to 57.62 feet. The elevation of the building is 57.65 feet while that of the yard is 55.7 feet.
In a letter dated March 17, 1970 respondents’ attorney forwarded the tax and exception sheets issued by the title company to appellant’s counsel and advised him that respondents were “ready to close provided the tenant has removed from the premises.” Appellant’s attorney responded that the contract provided that the appellant was not obligated to remove the tenant; appellant’s only responsibility was to serve a 30-day notice of termination and this had been done. At no time during this exchange did respondents question either appellant’s title or the exceptions noted by the insurance company.
At the time set for the closing appellant tendered a deed which was rejected by respondents on the ground that appellant was unable to deliver a good, marketable and insurable title. This contention was predicated upon the survey and exceptions noted above.
As a result of this impasse, respondents have sought redress in the courts for the return of their deposit and reimbursement for the costs of title examination and counsel fees. A motion for summary judgment and a cross motion for summary judgment dismissing the complaint were made by respondents and appellant, respectively. Special Term denied respondents’ motion, granted appellant’s motion, and dismissed the complaint. It found that, by reading the “ subject to ” and “ insurance ” clauses together, appellant had tendered an insurable title. With regard to respondents’ claim that title was unmarketable, Special Term concluded that the difference between the legal and existing grades of the sidewalk was a matter which related to abutting property and had no effect on title to the property which was the subject matter of the contract. The court also found that marketability was not impaired by the grade of the building (it was above the legal grade) or that of the yard, since no law, *307 ordinance or regulation was violated thereby. (There were no violations filed against the property.)
On appeal, the Appellate Division reversed with one Justice dissenting on the opinion at Special Term. The court found that respondents were entitled to a return of their down payment and $326.20 for title insurance fees, but dismissed the claim for counsel fees because the contract had limited appellant’s liability to the above items. Although it was the view of the majority below that the state of facts in the survey and the commissioner’s authority to require the raising of the sidewalk in the future constituted an encumbrance, the court considered the issue of marketability immaterial to its disposition of the case. Instead, the reversal was predicated on the title company’s failure to insure title unconditionally and without exception. It was on this basis that appellant was deemed to have breached the contract. The conclusion was reached even though the court stated, in apparent agreement with Special Term, that the “ subject to ” and ‘ ‘ insurance ’ ’ clauses had to be read together and that there had been no violation of the restrictive covenant.
We do not agree with the majority in the Appellate Division. The evidentiary showing made by the parties clearly establishes that appellant did all that was required of him by the terms of the contract. Consequently, we reverse the order appealed from and reinstate the determination of Special Term dismissing the complaint.
The contract of sale provided that appellant was required to deliver a title that a reputable insurance company would approve and insure. Respondents argue, and the Appellate Division has concluded that when a seller so contracts, he breaches his contract when the title company refuses to insure title unconditionally and without exception. This is, of course, the usual construction given to clauses of this nature (see, e.g., Gilchrest-Great Neck v. Byer, 11 N Y 2d 911, affg. 13 A D 2d 1027; Gilchrest House, Inc., v. Guaranteed Tit. & Mtge. Co., 302 N. Y. 852, affg. 277 App. Div. 788; Friedman v. Handelman, 300 N. Y. 188; New York Investors v. Manhattan Beach Bathing Parks Corp., 256 N. Y. 162; Flanagan v. Fox, 144 N. Y. 706, affg. on opn. at 6 Misc. 132). The rule is not, however, absolute, but rather is one to be tempered by the exigencies of the particular *308 contract. Thus, it is said that the title company’s approval must be unequivocal unless the exceptions are those contemplated by the contract (2 Harvey’s Law of Real Property and Title Closing, § 469.23, p. 778; Kopp v. Barnes, 10 AD 2d 532, 534-535). The contract before us addressed itself to the existence of easements and restrictive covenants and specifically provided that the conveyance was to be subject to these matters of record. The title company, disclosing the existence of a telephone easement and “ Waiver of Legal Grades ” restrictive covenant, excluded these items from coverage, except insofar as to say that they had not been violated. In so insuring, it was assuming responsibility for no less than that which respondents had expressly agreed to accept. The exceptions were matters specifically contemplated by the contract and, since there is no indication in the record that the parties intended anything other than the interlocking of the “subject to” and “insurance” clauses, it is our view that they must be read together to determine the scope of the seller’s obligation.
Our conclusidh is nothing more than an application of the ‘ ‘ rule of construction that a court should not ‘ adopt an interpretation ’ which will operate to leave a ‘ provision of a contract * * * without force and effect ’ (MusaTc Corp. v. Hotel Taft Corp., 1 N Y 2d 42, 46; Fleischman v. Furgueson, 223 N. Y. 235, 239)” (Corhill Corp. v. 8. B. Plants, Inc., 9 N Y 2d 595, 599). Stated differently, our concern is with the intent of the parties “ to the extent that they evidenced what they intended by what they wrote ” (Raleigh Assoc, v. Henry, 302 N. Y. 467, 473) and that intent must be gleaned from the several provisions of the contract (Heilman v. Samuel Goldwyn Prods., 26 N" Y 2d 175; Rodolits v. Neptune Paper Prods., 22 N Y 2d 383, 386-387). Although we do not fashion new contracts for the parties under the guise of contract construction (Morlee Sales Corp. v. Manufacturers Trust Co., 9 N Y 2d 16; Cream of Wheat Co. v. Crist Co., 222 N. Y. 487, 493-494), we are required to adjudicate their rights according to the unambiguous terms of the contract and therefore must give the words and phrases employed their plain meaning (Levine v. Shell Oil Co., 28 N Y 2d 205, 211).
Accordingly, where a purchaser agrees to take title subject to easements and restrictive covenants of record which are not *309 violated, this is the precise kind of title that the seller is obligated to tender and we are not persuaded that, absent an expression of a contrary intent in the contract, that obligation is broadened by the existence of the usual “ insurance ” clause. It is significant here that the parties used a standardized ‘ ‘ insurance ” clause in a form contract. They were, of course, free to vary its terms, but chose not to do so. As a result, their intent is clear. As a matter of practice over the years, literally thousands of exceptions have been made by insurance companies in similar circumstances where the parties take subject to easements and covenants of record and provide for title insurance by the use of a standardized clause. A conclusion that the seller would nevertheless be required to furnish title, insurable without exception, would not only render nugatory the “ subject to ” clause, but would also give every purchaser dissatisfied with his bargain a way of avoiding his contractual responsibilities. Surely, this was not contemplated in the contract before us.
The several cases which respondents cite to sustain their view as to the meaning of the ‘ ‘ insurance ’ ’ clause in the case before us do not support a contrary view. Cases such as Gilchrest-Great Neck v. Byer (11 N Y 2d 911, affg. 13 A D 2d 1027, supra) are merely interpretations of the particular contracts involved. There, in addition to an “ insurance ’ ’ clause similar to the one at bar, the purchaser protected itself by inserting a provision in the contract that the conveyance would be subject to covenants provided they were of record, would not render title unmarketable and would not prohibit the construction of an apartment house. The title company discovered a covenant prohibiting tenement houses and offered to insure that an apartment house would not be permanently enjoined provided that it would not be liable for the cost of litigation or for violations of certain setback restrictions. It was evident that the construction of an apartment house was the very purpose of the purchase contract and that the title company would not give its unqualified assent to such a venture. The purchaser was, therefore, allowed recovery because the seller had' not supplied either the kind of title or title insurance that the seller had contracted *310 for. Similarly, in New York Investors v. Manhattan Beach Bathing Parks Corp. (256 N. Y. 162, supra) and Flanagan v. Fox (144 N. Y. 706, affg. on opn. at 6 Misc. 132, supra), the title company excepted riskg which the purchaser had not agreed to take subject to and declined to insure that title as marketable.
Nor is Gilchrest House, Inc., v. Guaranteed Tit. & Mtge. Co. (302 N. Y. 852, affg. 277 App. Div. 788, supra) apposite. This was an action for slander of title brought by a prospective seller against a title company which had refused to insure title without excepting the possible claim of a prior contract vendee and our affirmance therein suggests no more than an application of the familiar rule that an insurer has the right to select the risks which it is willing to insure.
Respondents’ reliance on Friedman v. Handelman (300 N. Y. 188, supra) is also misplaced. Handelman signed a contract in which he agreed to purchase 90 lots subject to easements, covenants and restrictions of record and it was provided that title should be such as a specified title company would approve and insure. The defendant subsequently assigned this contract to Friedman and the assignees was given an option to annul the assignment in the -event that the title company refused to insure at least 80 of the 90 lots. A restriction affecting at least 80 of the lots was found which precluded the construction of any structure except a dwelling on not less than two plots and the title company declined to insure these lots without excepting the aforesaid restriction. This court concluded that although the title insurance tendered satisfied the requirements of Handel-man’s contract to purchase, i.e., the exceptions were matters which he agreed to take subject to, it ran afoul of an express provision in the assignment. Handelman’s assignee had clearly defined his rights in that instrument and since the insurance did not conform to its requirements, he was entitled to a refund of his down payment (id., at pp. 193-194).
The situation presented in this appeal is vastly different. Here, neither easement nor restrictive covenant were violated and the title company- agreed to insure in strict conformity to the bargain struck between the parties. Since there are no circumstances in this case which indicate that the parties intended *311 anything else, it is our view that the Appellate Division incorrectly concluded that appellant failed to tender insurable title.*
Nor is there merit in respondents’ remaining point that appellant did not tender a marketable title. The contract made the conveyance subject to a state of facts that an accurate survey would reveal, provided that these facts would not render title unmarketable. At the closing, respondents took the position that inasmuch as the survey revealed the difference in the grade of the sidewalk and similar problems in the grade of the building and yard, title was unmarketable.
It is axiomatic that a purchaser is entitled to marketable title unless the parties provide otherwise in the contract (see, e.g., Norwegian Evangelical Free Church v. Milhauser, 252 N. Y. 186; Wallach v. Riverside Bank, 206 N. Y. 434; 3 Warren’s Weed-N. Y. Real Property, § 1.01, p. 367; 62 N. Y. Jur., Vendor and Purchaser, § 45, p. 255). A seller is required to tender a title which is readily subject to resale and free from reasonable doubt (3 Warren’s Weed-N. Y. Real Property, § 2.01, pp. 368-369, supra). In the case before us, respondents do not question the validity of appellant’s title; instead, they focus their attack on the deficiency in grades. To be sure, “ [a] vendee has the right to a title that will enable him to hold his land in peace, and to be reasonably sure that no flaw or doubt will arise to affect its marketable quality and value ” (Acme Realty Co. v. Schinasi, 215 N. Y. 495, 506). It is for this reason that encumbrances which affect title, burden the property or limit the use, may render title unmarketable (3 Warren’s Weed-N. Y. Real Property, § 6.01, p. 381, supra). However, it is clear that the objec *312 ti-ons which respondents make do not fall within the ambit of this rule. With regard to the sidewalk, respondents do no more than rephrase their objection to the “ Waiver of Legal Grade ” restrictive covenant, a matter which they agreed to take subject to. Neither the use of the property nor the title thereto is affected by the covenants, and significantly, all the property which surrounds the subject property suffers from the same sidewalk grade irregularities. Although there is no present violation, respondents contend that they may be required in the future to raise the level of the sidewalk. This is nothing more than a normal incident to the ownership of real property within the City of New York. Section 230 of the New York City Charter places the responsibility for the maintenance and repair of sidewalks on the individual owner. This must be done in accordance with such specifications as may be prescribed by the Transportation Administration. Thus, if title is unmarketable here, then so is all property similarly situated within the city. This is manifestly not so. Consequently, respondents have failed to show that the sidewalk grade levels complained of render title unmarketable.
Lastly, respondents’ argument relating to the grade of the yard and building is similarly untenable. The survey clearly indicated that the first floor elevation of the building is above legal grade and respondents have failed to show that it is inaccurate or that a present violation of any municipal ordinance or department regulation exists. With regard to the yard, though its grade appears below the legal grade, no problem as to lateral support to adjoining lands or municipal streets is presented. It conforms to the zoning regulations of the City of New York (N. Y. City Zoning Resolution, art. II, ch. 3, § 23-42) and to the City Building Code (Administrative Code, § C26-201.0).
Accordingly, since appellant fully performed his agreement with respondents, the order appealed from should be reversed, with costs, and the order and judgment of Special Term reinstated.
Chief Judge Fuld and Judges Burke, Bergan, Breitel, Jasen and Gibson concur.
Order reversed, etc.

 It would further appear that questions relating to differences between the legal and existing grades of sidewalks abutting property conveyed are not a proper subject for title insurance. In Sperling v. Title Guar. & Trust Co. (227 App. Div. 5, affd. 252 N. Y. 613) a title company was instructed to search an insurance title. Though the title company found that a change in street grade had been authorized, it did not inform the purchasers and did not insure against it. It was held that since the request had been for a search and insurance of title, the company was not liable in either negligence or contract for a failure to disclose information upon a subject which does not affect the title (see Mafetone v. Forest Manor Homes, 34 A D 2d 566, 567). Thus, the problem with regard to the grade of the sidewalk appears to be a matter alien to the title insurance required in the contract of sale and would militate against the conclusion that the clause was breached by appellant.