■ NORMAN SCHREIBER et al., as Assignees of Schreiber Buick, Inc., Appellants-Respondents, v DICK VOIGHT BUICK, INC., Respondent-Appellant. — Order modified and, as modified, affirmed, without costs, in accordance with the following memorandum:. Both parties cross-appeal from so much of Special Term's order as denied their respective motions for summary judgment. The court found that "a genuine issue of fact exists as to the intent of the parties to the agreement dated March 31, 1976 which requires a hearing". The agreement provided for the lease of premises housing an auto dealership for an initial period of one year, with three two-year renewal options. The lease agreement also granted the lessee an exclusive option to purchase the demised premises, "exercisable at any time during the initial term of this lease or any renewal thereof" upon 30 days' written notice to the defendant lessor. Paragraph 14 B of the agreement sets forth the purchase price of the property in the event the option is exercised. It provides that: "The purchase price of the premises shall consist of the payment and/or assumption of the mortgages on the premises held by Marine Midland Bank-Rochester and Manufacturers Hanover Trust Company/Genesee Region, and a cash payment of Zero Dollars ($0) being the difference between the sum of $490,000.00 and the aggregate principal balance of mortgages on the premises held by the aforementioned banks *as of the date of signing this lease*" (emphasis added). Plaintiffs notified defendant in January, 1983 of their intent to exercise the option to purchase the demised premises. At closing the parties were unable to agree upon what the purchase price of the premises amounted to under paragraph 14 B of the lease agreement. Defendant maintained that it was entitled to a cash payment of $206,011.95, representing the difference between the $490,000 aggregate principal balances of the two mortgages on the premises on March 31, 1976 when the lease was signed and the principal amount of the mortgage indebtedness as of the date of closing, February 22, 1983. Plaintiffs, on the other hand, were willing to assume the full balance of the two mortgages on the property, but asserted that they had no further obligation to make any additional cash payments to defendant other than those paid pursuant to the terms of the agreement since the date the lease was signed. We find no ambiguity in the contract or factual issues which require a hearing. This court is required to adjudicate the parties' rights "according to the unambiguous terms of the contract and therefore must give the words and phrases employed their plain meaning" (*Laba v Carey,* 29 NY2d 302, 308; *Procopio v Fisher,* 83 AD2d 757; 10 NY Jur, Contracts, § 190, pp 93-94). Paragraph 14 B clearly provides that the purchase price consists of two elements: (1) payment and/or assumption of the outstanding mortgages on the premises and (2) a cash payment equal to the difference between the sum of $490,000 and the aggregate principal balances of these mortgages "as of the date of signing this lease." The aggregate principal balance of the mortgages at the time the lease was executed was $490,000. Thus, the cash payment due at the time the option to purchase was executed some seven years later was zero dollars, the same amount typed on the lease. The interpretation of an unambiguous contract presents a question of law for the court (*805 Third Ave. Co. v M. W. Realty Assoc.,* 58 NY2d 447). Accordingly, plaintiffs' motion for summary judgment must be granted. ¶ All concur, except Hancock, Jr., J. P., who dissents and votes to affirm in the following memorandum.

Hancock, Jr., J. P. (dissenting). I dissent. The question in dispute is whether the purchase price under the *option* is $490,000 (to be made up of the assumption of the mortgage balances existing at the time of exercise of the option plus a cash payment equal to the difference between those balances and $490,000 or, as plaintiffs contend, the assumption of the mortgage balances existing at the time of exercise with no cash payment. I believe Special Term was correct in holding that the record presents a factual issue as to the intent of the parties which requires a hearing. ¶ Paragraph 14 B of the lease is ambiguous. The words "and a cash payment of Zero Dollars ($0) being the difference between the sum of $490,000.00 and the aggregate principal balances of mortgages" can be read as referring only to the date of signing of the lease and as describing the difference between the mortgage balances and $490,000 (i.e., "Zero Dollars ($0)") as it existed *on that date* when the mortgage balances exactly equaled $490,000. ¶ That the parties did *not* contemplate that the consideration for the purchase under paragraph 14 B would be the assumption of the mortgages with no additional cash payment is shown by paragraph 14 D which provides that in the event the lessor permits the balances to become encumbered by a lien, the lessee may satisfy the lien and deduct the amount paid from the rent due or "from the *cash payment* at closing upon exercise of the option to purchase" (emphasis added). Moreover, in an addendum to the lease signed on the same day, the parties make specific reference to the cash payment to be made upon exercise of the option in the following provisions: "Paragraph 14 B of the Lease describes your option to purchase the leased premises upon terms and conditions therein set forth, including among other things, *a cash payment* by you to the Company and the payment and/or assumption by you of the Company's indebtedness to Marine Midland Bank and to Manufacturers Hanover Trust Company/Genesee Region ('Manufacturers'), therein stated to be $192,802.35, and $297,197.65, respectively, as of this date" (emphasis added). And: "3. The amount of the *cash payment* due to the Company upon exercise of your purchase option under Paragraph 14 B of the Lease shall be increased by an amount equal to any reductions in the indebtedness to Manufacturers by reason of payments upon such indebtedness made pursuant to paragraphs 1 and 3 hereof" (emphasis added). ¶ Additionally the record shows that there is parol evidence supporting defendants' interpretation of paragraph 14 B, including a rejected prior draft prepared by plaintiffs' attorney in which plaintiffs' monthly rental payments were to be "credited toward the purchase price." Despite this rejection, plaintiffs' interpretation of paragraph 14 B as it was finally adopted achieves essentially the same result. ¶ It should be noted that plaintiffs' interpretation of paragraph 14 B has the effect of changing what purports to be a lease into a land contract. The lessees rather than the lessors get the benefit of the "rental payments" in the form of reductions of the mortgage balances and the consequent reduction in the option purchase price. The net result is that the lessees are permitted to enjoy the use and occupancy of the premises until the option is exercised without any rental charge. The circumstances surrounding the signing of the lease should be developed to establish whether the parties intended such a result. (Appeals from order of Supreme Court, Monroe County, Rosenbloom, J. — summary judgment.) Present — Hancock, Jr., J. P., Callahan, Doerr, O'Donnell and Moule, JJ.