AYERSLEE CORPORATION,
N.V., Plaintiff,

v.

OVERLOOK SPONSOR CORP., Solstead Associates, Trabossom Associates, Bos Holding Corp., First Boston, Inc., G. Ware Travelstead, and Scott Lowry, Defendants.

No. 82 Civ. 6173 (JES).

United States District Court,
S.D. New York.

Oct. 7, 1985.

Coudert Bros., New York City, for plaintiff; Mark D. LeBow, Laurie E. Cohen, New York City, of counsel.

Robinson, Silverman, Pearce, Aronsohn & Berman, New York City, for defendants Overlook Sponsor Corp. and Solstead Associates; Edward B. Schoen, George B. Yankwitt, Mark J. Sugarman, New York City, of counsel.

Shearman & Sterling, New York City, for defendants Trabossom Associates, G. Ware Travelstead, Bos Holding Corp., First Boston, Inc. and Solstead Associates; William J.F. Roll, III, New York City, of counsel.

## OPINION AND ORDER

SPRIZZO, District Judge:

Plaintiff Ayerslee Corp., N.V. ("Ayerslee") and defendant Overlook Sponsor Corp. ("Overlook") formed Plaza 49 Associates, a limited partnership, for the purpose of constructing an office building in Manhattan called Tower 49. At all relevant times herein, Ayerslee has been the sole limited partner and Overlook has been the sole general partner of Plaza 49 Associates.

Ayerslee sues Overlook and others who, directly or indirectly, are entitled to a share of the profits from the Tower 49 project,[1] seeking a declaratory judgment that Ayerslee's interest in the proceeds generated by Tower 49 has not been and cannot be reduced below 15%, and demanding both a preliminary and a permanent injunction enjoining the defendants from distributing any proceeds from the Tower 49 project unless 15% of those proceeds are distributed to Ayerslee. Ayerslee bases its claim on the alleged violation by defendants of various provisions of partnership agreements entered into with respect to the development of Tower 49, and the alleged breach by Overlook of its fiduciary duty, as general partner of Plaza 49 Associates, to Ayerslee as limited partner.

The parties filed cross-motions for summary judgment. At oral argument the par-

ties agreed to waive trial on all issues, stating that there was no need for the Court to hear oral testimony. Therefore, the Court decides the case on the merits on the papers filed with respect to the summary judgment motions, and additional materials filed with leave of the Court after oral argument. This Opinion and Order constitute the Court's findings of fact and conclusions of law in accordance with Fed.R. Civ.P. 52.

## FACTS

In mid-1980 Ayerslee entered into a number of land contracts to acquire a group of contiguous properties in midtown Manhattan ("the premises"), paying nearly one million dollars in fees, down payments and deposits. Closings on the various properties were scheduled, commencing in July of 1981 and continuing through 1982, at which times the balances due on the properties had to be paid. Feasibility reports, prepared with respect to developing the premises and constructing Tower 49, indicated that the cost of consummating the land purchase contracts and constructing the building would exceed $108,000,000.00.

In May of 1981, Ayerslee commenced negotiations with Overlook to form a joint venture with respect to the Tower 49 project. On June 30, 1981, Ayerslee and Overlook entered into a limited partnership agreement creating Plaza 49 Associates (the "Plaza 49 Agreement"). The stated purpose of the Plaza 49 Associates partnership was to acquire ownership of the various properties Ayerslee had contracted to purchase and to develop the premises for purposes, *inter alia*, of sale, lease or conversion into cooperative or condominium ownership. Pursuant to the Plaza 49 Agreement, Ayerslee assigned the land contracts to Plaza 49 Associates. Ayerslee received $500,000.00 from the partnership on account of the deposits and other ex-

---

**1.** In addition to Overlook, defendants are Solstead Associates ("Solstead"), a limited partnership which owns Tower 49, Trabossom Associates ("Trabossom"), a general and limited partner of Solstead, G. Ware Travelstead, a partner of Trabossom, BOS Holding Corp., also a partner of Trabossom, First Boston, Inc., parent of BOS Holding Corp., and Scott Lowry, United States representative of Cultra Corp., N.V. ("Cultra"), a partner of Solstead.

penses already paid by Ayerslee, with the balance treated as a loan to the partnership.

Overlook, as general partner, contributed more than $3,000,000.00 to Plaza 49 Associates, and assumed responsibility to supervise the development and to provide or obtain the sums necessary for conducting the partnership business. The Plaza 49 Agreement delegated to Overlook and any future general partners all the rights, powers and privileges of a general partner provided in the Uniform Limited Partnership Act, and "the right in their discretion to do all things and to take all action which they deem in good faith necessary or appropriate to develop the Premises in the manner in which the General Partners believe it most feasible and appropriate." *See* Plaza 49 Agreement at ¶ 10(a) (contained in Ex. A to the Affidavit of David S. Solomon ("Solomon Aff.") in Support of Defendants' Motion for Summary Judgment). Under the Agreement, Ayerslee consented to "any sale or other disposition, encumbrance, mortgage or lease ... by the General Partners on behalf of the Partnership affecting the Partnership Property or any part thereof on such terms and conditions as may be approved by the General Partners in their sole discretion...." *See* Plaza 49 Agreement at ¶ 11(b). With respect to distributions and profits, the Plaza 49 Agreement provided that the net profits, cash flow and capital proceeds of the partnership would be distributed to the partners, with 22.5% going to Ayerslee and 77.5% to Overlook.

The Plaza 49 Agreement expressly provided for future financing of the Tower 49 project from sources other than Ayerslee or Overlook, including the introduction of additional partners to Plaza 49 Associates on terms within Overlook's sole discretion. The Agreement stated at paragraph 5(g) that "the admission of additional ... Partners ... shall not diminish the interest of [Ayerslee] in Partnership capital, income, profits or distributions...." However, it also provided that:

Notwithstanding anything to the contrary contained in Paragraph 5(g) or elsewhere in this Agreement, the General Partners shall have the right in their sole discretion to grant an equity participation to any mortgagee of the Partnership Property, and in such case the interests of the General Partners and the Limited Partners shall each be reduced pro-rata by the percentage of the equity participation. For example, if 50% of the equity in the Partnership is granted to the mortgagee, the interest of the General Partners shall be reduced from 77½% to 38¾% and the interest of the Limited Partners shall be reduced from 22½% to 11¼%.

Plaza 49 Agreement at ¶ 6(d).

Overlook encountered difficulty in obtaining the funds required for the July, 1981 closings, and postponed those closings until August 20, 1981. On or about August 14, 1981, Overlook forwarded to Ayerslee a proposed partnership agreement between Plaza 49 Associates and defendant Trabossom Associates (the "Solstead Agreement"), whereby Plaza 49 Associates and Trabossom would become the general and limited partners of a new limited partnership, Solstead Associates. The proposal, subsequently adopted without substantive change, provided that Plaza 49 Associates would transfer to Solstead its rights under the various land contracts constituting the partnership property of Plaza 49 Associates, and that Trabossom would provide the funds required for the August 20 closings and would arrange for a $24 million loan to Solstead. Pursuant to the Solstead Agreement, Plaza 49 Associates and Trabossom would each receive a 50% equity interest in Solstead. Plaza 49 would no longer have any ownership interest in Tower 49 itself. The Solstead Agreement specifically provided for admission of additional partners into Solstead on the consent of Plaza 49 Associates and Trabossom, for purposes of contributing funds to the Tower 49 development, with *pro rata* reduction of the percentage interests of all Solstead partners. *See* Solstead Agreement at

¶ 2.11 (contained in Exhibit B to the Solomon Aff.).[2]

By letter dated August 18, 1981, Overlook notified Ayerslee that Trabossom requested Ayerslee's consent to the execution of the Solstead Agreement by Plaza 49 Associates, and also advised Ayerslee of Ayerslee's right, pursuant to paragraph 26 of the Plaza 49 Agreement, to advance the funds necessary for the closings. By letter to Overlook dated August 19, 1981, Ayerslee stated that it would not exercise its right to advance the funds. Rather, Ayerslee agreed to give its consent to the formation of Solstead, as requested by Trabossom, on the condition that Ayerslee's interest in Plaza 49 Associates be increased, "subject to the unlimited dilution contemplated by the Solstead Agreement." [3]

On August 20, 1981, Ayerslee and Overlook executed an amendment to the Plaza 49 Agreement (the "Amended Plaza 49 Agreement"), which provided that Ayerslee consented to the formation of Solstead, and that Ayerslee's interest in profits and distributions under the Plaza 49 Agreement was increased from 22.5% to 30%, while Overlook's interest was decreased from 77.5% to 70%.[4] Thereafter, also on August 20, 1981, Plaza 49 Associates and Trabossom executed the Solstead Agreement. Ayerslee is not and never has been a party to the Solstead Agreement or a partner in Solstead.

The August 20 closings took place, and at some time thereafter Solstead commenced negotiations with the Bank of New York ("the Bank") to make a construction loan to Solstead. The Bank agreed to loan Solstead $100 million if Solstead secured an additional $40 million from another source. Solstead obtained the $40 million by admitting Cultra as a new general and limited partner of Solstead on or about July 1, 1982. Cultra contributed $20 million to Solstead and an affiliate of Cultra loaned Solstead another $20 million. Cultra received a 50% interest in Solstead, and the interests of Trabossom and Plaza 49 Associates in Solstead were each reduced to 25%. *See* Amended and Restated Agreement of Limited Partnership of Solstead Associates ("the Amended Solstead Agreement") at ¶ 28 (contained in Ex. D to the Solomon Aff.). The Bank then loaned the $100 million to Solstead.

2. Paragraph 2.11 provides as follows:
   *Admission of Additional Partners.* Upon joint consent of the General Partners, the General Partners shall have the right, in their sole discretion and without the consent of any Limited Partner to admit as an additional General Partner or Limited Partner, any lender, or its subsidiary, which need not be an institutional lender, which shall make the Construction Loan or a permanent mortgage loan to the Partnership and to grant such equity participation in the Partnership to each such lender as they, in their sole discretion, shall determine. The Percentage Interests of all the General and Limited Partners in the Partnership shall be reduced pro rata by their respective shares of the amount of the Percentage Interest of the lender or its subsidiary. The General Partners shall not have the right to grant such an equity participation in connection with the Land Loan but this shall not affect such right if the Land Loan is included in the Construction Loan provided that such equity participation shall only become effective upon the first funding by the Construction Loan lender under the Construction Loan.

Solstead Agreement at ¶ 2.11.

3. This clause clearly reflects that dilution of plaintiff's interest in Tower 49 itself was contemplated, and is in itself dispositive of plaintiff's claim that that dilution can be the predicate for any claim against defendants for breach of contract or fiduciary duty. Ayerslee also demanded that the Solstead Agreement provide that Ayerslee's partnership loan to Plaza 49 Associates, as described in paragraph 26 of the Plaza 49 Agreement, be explicitly described as a "Land Loan reimbursement item under Paragraph 4.1 of the Solstead Agreement...." Paragraph 4.1, as executed, discusses land loans to Solstead and provides, *inter alia,* that Trabossom, in its capacity as general partner of Solstead, would have the primary responsibility for "the payment by [Solstead] of such sums as are required under Paragraph 26 of the Plaza 49 limited partnership agreement to be paid to Ayerslee...." *See* Solstead Agreement at ¶ 4.1.

4. While the Amended Plaza 49 Agreement is dated August 17, 1981, the parties agree that it was executed on August 20, 1981.

## DISCUSSION

Ayerslee contends that the admission of Cultra as a limited and general partner of Solstead impermissibly reduced Ayerslee's percentage interest in the proceeds of the Tower 49 project, and that Overlook's actions with respect to admitting Cultra violated paragraph 5(g) of the Plaza 49 Agreement and Overlook's fiduciary duties to Ayerslee. Ayerslee also argues that, by admitting Cultra, all defendants violated paragraph 2.11 of the Solstead Agreement.

At oral argument, counsel for plaintiff advised the Court that its claim is simply that any reduction of the amount Plaza 49 Associates receives from Solstead due to the addition of Cultra as a partner must be borne by Overlook, and that Ayerslee is entitled to 15% of the amounts realized by Solstead, or any other entity owning Tower 49, which percentage cannot be reduced by defendants.

The crux of plaintiff's claim is its contention that pursuant to the Plaza 49 Agreement, Ayerslee was originally entitled to 22.5% of the proceeds from *the Tower 49 project*, which was increased to 30% by the Amended Plaza 49 Agreement, reduced with Ayerslee's consent to 15% by the formation of Solstead, and finally wrongfully reduced to 7.5% by the admission of Cultra into Solstead via the Amended Solstead Agreement.

■ While the Court agrees that the effect of the Amended Solstead Agreement was to reduce the amount Ayerslee would ultimately realize from the Tower 49 project, it rejects Ayerslee's contention that the Plaza 49 Agreement entitles plaintiff to any percentage of the proceeds from Tower 49 itself. The Plaza 49 Agreement requires that Ayerslee receive a percentage of the "profits of the Partnership." *See* Plaza 49 Agreement at ¶ 7(a). The Plaza 49 Agreement clearly defines "the Partnership" as "Plaza 49 Associates." *See* Plaza 49 Agreement at ¶ 2.

The Court rejects plaintiff's contention that "the Partnership," as used in the Plaza 49 Agreement, refers to any partnership which owns the Tower 49 premises, and finds no basis to hold that the partnership governed by the Plaza 49 Agreement is any other than Plaza 49 Associates. *See, e.g., Goldfeld v. Mattoon Communications Corp.*, 99 A.D.2d 711, 712, 472 N.Y.S.2d 6, 7 (1st Dept.1984). No other partnership even existed at the time of the execution of the Plaza 49 Agreement. Because the Plaza 49 Agreement is unambiguous as to the partnership referred to therein, the Court cannot rewrite that agreement. *See, e.g., Laba v. Carey*, 29 N.Y.2d 302, 308, 277 N.E.2d 641, 644, 327 N.Y.S.2d 613, 618 (1971); *Rodolitz v. Neptune Paper Products, Inc.*, 22 N.Y.2d 383, 386–87, 239 N.E.2d 628, 630–31, 292 N.Y.S.2d 878, 881 (1968); *Curtin v. Glazier*, 94 A.D.2d 434, 438, 464 N.Y.S.2d 899, 902 (4th Dept.1983); *Harold J. Rosen Trust v. Rosen*, 53 A.D.2d 342, 352, 386 N.Y.S.2d 491, 499 (4th Dept. 1976), *aff'd on opinion below*, 43 N.Y.2d 693, 371 N.E.2d 828, 401 N.Y.S.2d 66 (1977). Rather, the Court must enforce the plain meaning of the Agreement. *See, e.g., Laba, supra*, 29 N.Y.2d at 308, 277 N.E.2d at 644–45, 327 N.Y.S.2d at 618; *Levine v. Shell Oil Co.*, 28 N.Y.2d 205, 212, 269 N.E.2d 799, 802–03, 321 N.Y.S.2d 81, 86 (1971); *cf. Breed v. Insurance Co. of North America*, 46 N.Y.2d 351, 355, 385 N.E.2d 1280, 1282, 413 N.Y.S.2d 352, 355 (1978).

Therefore, pursuant to the Plaza 49 Agreement, as amended, Ayerslee is entitled to 30% of the profits of *Plaza 49 Associates*, and has no real property interest in Tower 49 itself, or even in any of the other partnerships created for the purpose of constructing and financing that building. *See, e.g., Reiter v. Greenberg*, 21 N.Y.2d 388, 391, 235 N.E.2d 118, 120, 288 N.Y.S.2d 57, 60 (1968); *Riviera Congress Associates v. Yassky*, 25 A.D.2d 291, 296, 268 N.Y.S.2d 854, 859 (1st Dept.), *aff'd*, 18 N.Y.2d 540, 223 N.E.2d 876, 277 N.Y.S.2d 386 (1966). Indeed, as noted above, the Tower 49 premises were transferred to Solstead with Ayerslee's consent when Solstead was created, and Plaza 49 Associates—the only partnership to which Ayerslee was a party—no longer has any ownership interest in Tower 49.

Nor does any other provision of the Plaza 49 Agreement give Ayerslee an interest in Tower 49. While paragraph 5(g) of the Plaza 49 Agreement provides that, with the exception of a mortgagee, who pursuant to paragraph 6(d) may be granted equity participation in the Plaza 49 Associates partnership, the addition of new general or limited partners into "the Partnership ... shall not diminish the interest of [Ayerslee] in Partnership capital, income, profits or disbursements....," this clause only relates to Ayerslee's interest in Plaza 49 Associates. For the reasons stated above, the Court rejects plaintiff's contention that this provision refers to whatever partnership owns Tower 49.

The Court also rejects plaintiff's argument that the amendment to the Plaza 49 Agreement secures to it any interest in Tower 49. Nothing in the amendment so provides. Moreover, counsel for Ayerslee proposed that the amendment include clauses providing that if Plaza 49 Associates' percentage interest in Solstead was reduced beyond a specified amount due to certain occurrences, including admission of a lending partner into Solstead, Ayerslee's percentage interest in Plaza 49 Associates would be adjusted to limit the amount of that reduction borne by Ayerslee. These clauses, however, were not included in the Amended Plaza 49 Agreement as executed. Thus it is clear that Ayerslee is now seeking to accomplish by judicial fiat what it was not able to secure by arms-length negotiation. This case, therefore, clearly illustrates the wisdom of the policy reflected in the cases cited above, which precludes a court from re-fashioning a contract at the request of one or the other of the parties, especially since the Solstead Agreement does not purport to grant to Ayerslee any interest in the proceeds of Tower 49, and does not incorporate any provision of the Plaza 49 Agreement which allegedly creates or protects such an interest.

■ In sum, where, as here, the parties have entered into a complete partnership agreement, the rights of the partners are fixed and controlled by that agreement.

*See, e.g., Lanier v. Bowdoin,* 282 N.Y. 32, 38, 24 N.E.2d 732, 735 (1939); *Raymond v. Brimberg,* 99 A.D.2d 988, 988–89, 473 N.Y. S.2d 437, 439 (1st Dept.1984), *appeal dismissed,* 64 N.Y.2d 775 (1985); *Riviera, supra,* 25 A.D.2d at 295–96, 268 N.Y.S.2d at 858; *cf. Audino v. Lincoln First Bank of Rochester,* 105 A.D.2d 1091, 1094, 481 N.Y. S.2d 928, 931 (4th Dept.1984). Pursuant to the Plaza 49 Agreement, as amended, the only partnership to which Ayerslee was ever a party, Ayerslee's only interest is in 30% of the profits and distributions of Plaza 49 Associates. Neither the formation of Solstead nor the addition of Cultra as a partner thereto had any effect on that interest.

■ Ayerslee's allegation that, by agreeing to the admission of Cultra as a partner to Solstead, Overlook breached paragraph 5(g) of the Plaza 49 Agreement is likewise without merit. As noted above, that provision relates to the admission of new partners into *Plaza 49 Associates,* and requires that Ayerslee's share of *Plaza 49* profits not be reduced thereby. It does not apply to any other partnership, and therefore could not be violated by the admission of a partner into Solstead. Nor does the Solstead Agreement incorporate paragraph 5(g), or provide for any similar protection of Ayerslee's rights. Paragraph 5(g) is simply irrelevant to the transaction challenged here.

■ Nor is there any merit to the claim that Overlook breached any fiduciary duty to Ayerslee. It cannot be disputed that Overlook, as a general partner of Plaza 49 Associates, owed a fiduciary duty to Ayerslee as limited partner. *See, e.g., Newburger, Loeb & Co., Inc. v. Gross,* 563 F.2d 1057, 1078 (2d Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978); *Riviera Congress Associates v. Yassky,* 18 N.Y.2d 540, 547, 223 N.E.2d 876, 879, 277 N.Y.S.2d 386, 392 (1966); *Lichtyger v. Franchard Corp.,* 18 N.Y.2d 528, 536–37, 223 N.E.2d 869, 873–74, 277 N.Y.S.2d 377, 383–84 (1966); *cf. Meinhard v. Salmon,* 249 N.Y. 458, 463–64, 164 N.E. 545, 546 (1928). Ayerslee argues that Overlook therefore had a duty to protect Ayerslee's interest in the proceeds generat-

ed by Tower 49, and that, by permitting Plaza 49 Associates to enter into the Amended Solstead Agreement, which admitted Cultra into the Solstead partnership, Overlook breached this duty to Ayerslee.

Once again, the basis of Ayerslee's claim is its assertion that the Plaza 49 Agreement provides Ayerslee with an undilutable interest in the proceeds of the Tower 49 project itself. The Court has rejected this contention, and has found that Ayerslee's sole interest is in the proceeds of Plaza 49 Associates. Therefore, it follows that, to the extent that the claim of breach of fiduciary duty is based upon the admission of Cultra, the claim must be rejected.

■ Nor does the Court find that Overlook breached any fiduciary duty to Ayerslee in any other way. There is no evidence before the Court to support an inference that Overlook may have been guilty of fraud or self-dealing. In fact, the Court finds that whatever Overlook did was reasonably designed in good faith to effectuate the purposes for which Plaza 49 Associates was formed in the first place.[5] Admitting Cultra into Solstead resulted in obtaining the $140 million necessary for the development of Tower 49, which is precisely the goal of Ayerslee's investment. While this did effectively reduce the amount of money Ayerslee would realize from its investment in Plaza 49 Associates, the dilution of Plaza 49 Associates' interest in Solstead affected Ayerslee and Overlook on a *pro rata* basis, and the Court rejects Ayerslee's contention that Overlook is contrac-

tually bound to bear the entire reduction itself.

In its complaint, Ayerslee also alleged that the admission of Cultra into Solstead violated paragraph 2.11 of the Solstead Agreement, because paragraph 2.11 provides that additional partners can be admitted into Solstead only if they make a construction loan or a permanent mortgage loan, and Cultra provided neither. In its papers filed on the motion for summary judgment, Ayerslee argued that it has standing to sue for a breach of paragraph 2.11, despite the fact that it is not a party to the Solstead Agreement, because paragraph 2.11 was bargained for and included in the Solstead Agreement for *Ayerslee's* benefit and protection, as consideration for Ayerslee's consent to the execution of the Solstead Agreement by Plaza 49 Associates.

At oral argument plaintiff advised the Court that it is not, in fact, suing on a breach of paragraph 2.11, but is arguing simply that Overlook, in allowing Plaza 49 Associates to breach paragraph 2.11 of the Solstead Agreement, breached both Ayerslee's rights pursuant to the Plaza 49 Agreement and Overlook's fiduciary obligations under that Agreement. The Court rejects both arguments.

The Court can find no basis to hold that Ayerslee has standing to sue for breach of the Solstead Agreement. Ayerslee admits it is not now and never has been a party to that agreement. Ayerslee argues, however, that at the time the Solstead Agree-

---

5. Throughout these proceedings, Ayerslee has focused attention on a number of actions by Overlook which it apparently contends constituted a breach of Overlook's fiduciary duty. However, even assuming arguendo that any of these actions constituted such a breach, none would require a ruling that Ayerslee receive 15% of the proceeds of Solstead, which is the only relief Ayerslee seeks here. For example, Ayerslee contends that the Amended Solstead Agreement deleted Ayerslee's right, as provided in the Solstead Agreement, to priority repayment of its capital contribution to Plaza 49 Associates, that Overlook failed to inform Ayerslee of the anticipated admission of Cultra as required by the Plaza 49 Agreement and that Ayerslee's consent was required to admit Cultra into Solstead.

The Court need not reach the merits of any of these contentions, because plaintiff has not in its complaint sought damages for these alleged breaches. *Matter of Brandt*, 81 A.D.2d 268, 440 N.Y.S.2d 189 (1st Dept.1981), cited by plaintiff, is inapposite. There, the court held that a cestuis of a trust may sue derivatively on behalf of the trust if the trustees refuse to do so, and that a limited partner could properly sue derivatively the general partners of the partnership to which all were parties, on behalf of the partnership itself, or individually for an accounting. Ayerslee is neither the cestuis of a trust nor a limited partner of Solstead, and therefore *Brant* has no bearing on Ayerslee's right to sue for breaches of the Solstead Agreement.

ment was proposed, Ayerslee expressed concern that its return from the Tower 49 project could be further reduced, and that Overlook assured Ayerslee that the creation of Solstead would leave Ayerslee in basically the same position it had enjoyed before. Ayerslee points to a letter, from Overlook to Ayerslee, dated August 18, 1981, wherein Overlook stated that Ayerslee would remain in "substantially the same position as contemplated by Paragraph 6(d) of the Plaza 49 agreement." Ayerslee contends that this assurance was ultimately reflected in paragraph 2.11 of the Solstead Agreement, and that it consented to the Solstead Agreement only on that basis.

■ That claim, however, is not supported by the evidence. The evidence shows that paragraph 2.11 was included in the original draft of the proposed Solstead Agreement sent to Ayerslee by Overlook on August 14, 1981, and was not the result or subject of any negotiations with Ayerslee. In fact, protection of Ayerslee's right to repayment of its loan to Plaza 49 Associates was specifically included in the Solstead Agreement at Ayerslee's insistence. *See* note 3 *supra*. The Court can infer from this that if paragraph 2.11 was intended to protect some right of Ayerslee's, it would have likewise specifically so provided. Moreover, from the unsuccessful efforts to add clauses to the Amended Plaza 49 Agreement limiting the impact on Ayerslee of any reduction in Plaza 49 Associates' interest in Solstead, made by Ayerslee's counsel after Ayerslee received the proposed Solstead Agreement, the Court can also infer that paragraph 2.11 did not, in Ayerslee's understanding, afford such protection. It follows that, because Ayerslee is neither a party to the Solstead Agreement nor the intended beneficiary of paragraph 2.11, it lacks standing to sue for any alleged breach of that agreement.

The Court also finds that plaintiff's claim of breach of fiduciary duty based on that clause is not supported by the evidence and rejects Ayerslee's argument that, by allowing Plaza 49 Associates to breach the Solstead Agreement, Overlook breached its fiduciary duty and contractual obligations

pursuant to the Plaza 49 Agreement because it permitted a reduction of Ayerslee's interest in Tower 49 proceeds. The Court has already found that Ayerslee has no direct interest in the proceeds of the development project, and that no breach of any fiduciary obligation can be based upon the mere fact that Ayerslee's share of those proceeds has been reduced, especially where, as here, the reduction occurred as a consequence of a financial arrangement that was essential in bringing to fruition the construction venture contemplated by the Plaza 49 Agreement.

### CONCLUSION

Ayerslee is entitled to 30% of the profits and distribution of Plaza 49 Associates, pursuant to the Plaza 49 Agreement, as amended. Ayerslee is not entitled to any percentage of the proceeds of the Tower 49 project itself, or those of Solstead or any other partnership which may own Tower 49. Ayerslee's application for both a preliminary and a permanent injunction is denied.

It is SO ORDERED.