*672 OPINION OF THE COURT
Memorandum.
Order modified with $10 costs to defendants, motion for summary judgment in favor of the defendants granted and complaint dismissed and, as so modified, order affirmed.
Plaintiffs entered into a contract to purchase the house of the defendants Messina and pursuant to the contract, a down payment was deposited with the defendant Ajello. The contract provided that it was to be sold subject to "Covenants, restrictions, reservations * * * of record * * * provided same are not violated by present structure or the present use of premises” and the parties added to said clause the phrase "or render title unmarketable.” Another clause of the contract provided that "Sellers shall give and purchasers shall accept such title as any New York City title company will be willing to approve and insure in accordance with their standard form of title policy, subject only to the matters provided for in this contract.” After receipt of the title report, plaintiffs notified the defendants that the title was unmarketable due to the restrictions and covenants of record and demanded the return of their down payment. When the demand was refused, this suit was commenced.
The language of this contract does not call for an unqualified or unlimited title policy. It calls for a standard policy, "subject only to the matters provided for in this contract.” This would include that first clause mentioned above in which the property was sold subject to these covenants and restrictions of record provided that the present structure did not violate them and provided that title was not rendered unmarketable.
In Laba v Carey (29 NY2d 302, 307-309, rearg denied 30 NY2d 694) the contract of sale contained somewhat similar provisions, covenants and restrictions but did not have the additional phrase "or render title unmarketable.” The Court of Appeals noted that the policy issued by the title company would only have to comply with the provisions of the contract of sale and that "The contract before us addressed itself to the existence of easements and [restrictions] * * * of record. The title company, disclosing the existence of a telephone easement and 'Waiver of Legal Grades’ restrictive covenant, excluded these items from coverage, except insofar as to say that they had not been violated. In so insuring, it was assuming responsibility for no less than that which respondents had *673 expressly agreed to accept. The exceptions were matters specifically contemplated by the contract”. (Supra, at 308.) The court went on to state: "Accordingly, where a purchaser agrees to take title subject to easements and restrictive covenants of record which are not violated, this is the precise kind of title that the seller is obligated to tender and we are not persuaded that, absent an expression of a contrary intent in the contract, that obligation is broadened by the existence of the usual 'insurance’ clause in a form contract. * * * A conclusion that the seller would nevertheless be required to furnish title, insurable without exception, would not only render nugatory the 'subject to’ clause, but would give every purchaser dissatisfied with his bargain a way of avoiding his contractual responsibilities. Surely, this was not contemplated in the contract before us.” (Supra, at 308-309; emphasis added.)
In Laba (supra), as in the case at bar, neither the easements nor the restrictive covenants were violated by the present use and the contract was silent as to any special use intended by the plaintiffs for the property.
The essential issue in this case is whether the mere existence of covenants and restrictions of record renders the title unmarketable. An understanding of what renders title unmarketable can be found in the case of Regan v Lanze (40 NY2d 475, 481-482) wherein the court stated:
"The disposition of this case turns on the marketability of defendants’ title. A marketable title has been defined as one that may be freely made the subject of resale (Trimboli v Kinkel, 226 NY 147, 152; see 62 NY Jur, Vendor and Purchaser, §48; 3 Warren’s Weed New York Real Property, Marketability of Title, § 2.01). It is one which can be readily sold or mortgaged to a person of reasonable prudence, the test of the marketability of a title being whether there is an objection thereto such as would interfere with a sale or with the market value of the property (Brokaw v Duffy, 165 NY 391, 399; Heller v Cohen, 154 NY 299, 306; Vought v Williams, 120 NY 253, 257; Scwartz, Real Estate Manual, p 581). The law assures to a buyer a title free from reasonable doubt, but not from every doubt * * * and the mere possibility or suspicion of a defect, which according to ordinary experience has no probable basis, does not demonstrate an unmarketable title * * *
"To be sure, a purchaser is entitled to a marketable title *674 unless the parties stipulate otherwise in the contract (Laba v Carey, 29 NY2d 302, 311). Except for extraordinary instances in which it is very clear that the purchaser can suffer no harm from a defect or encumbrance, he will not be compelled to take title when there is a defect in the record title which can be cured only by a resort to parol evidence or when there is an apparent encumbrance which can be removed or defeated only by such evidence”. (See also, Voorheesville Rod & Gun Club v Tompkins Co., 158 AD2d 789; DeJong v Mandelbaum, 122 AD2d 772, 774; Weiss v Cord Helmer Realty Corp., 140 NYS2d 95, 98-99; 62 NY Jur, Vendor and Purchaser, § 48.)
In applying these rules to the facts of the case at bar, it is readily apparent that the contract was silent as to any special use that plaintiffs may have had in mind for the property. It is also conceded that the present use of the property did not violate said covenants and restrictions of record. It is therefore concluded that no reasonable person, in the absence of contractual provision calling for a special use of the property, would be denied reasonable enjoyment of the property for his "intended and announced purposes” (DeJong v Mandelbaum, supra, at 774). The mere existence of covenants and restrictions of record which did not affect the present use of the property as set forth in the contract between the parties herein provided purchasers with what they had contracted for. Since they were in default under the terms of the contract of sale, they were not entitled to the return of their down payment.