Pizzuto, J.,
dissents and votes to modify the order of the court below by granting plaintiffs’ motion for summary judgment in the following memorandum. The majority did not give proper weight to the significance of the fact that added to and made a part of the typed paragraph (1) of the rider, which provided that the premises was sold subject to: "(b) covenants, restrictions, reservations, utilities, easements and agreements, of record, insofar as the same may now be in force or effect, provided same are not violated by the present structure or the present use of premises”, there was an inked insertion, "or render title unmarketable” (emphasis supplied).
Both the NYBTU standard form of contract and the two-page typed rider contained handwritten modifications made at the contract signing, obviously due to the negotiations of the attorneys as to the terms of the contract prior to the execution thereof by the parties.
*675 The issue then becomes whether or not exceptions listed in the report of the Chicago Title Insurance Company concerning a declaration contained in liber 6150 at page 569 and liber 6150 at page 573, as well as an easement in liber 6131 at page 276 and liber 6104 at page 65 render title unmarketable. Clearly, the purchasers’ attorney modified the aforementioned quoted subject clause by the addition of the words in the disjunctive "or render title unmarketable” (emphasis supplied). Those words must be given some meaning in determining under what circumstances the purchasers were obligated to take title.
The declaration contained in liber 6150 at page 573 was a covenant restricting the use of the land, not mentioned anywhere in the contract. The restrictive covenant provided that no building may be erected other than private dwellings, limited the use to two families, limited the carrying-on of a trade or business at the premises, prescribed minimum setbacks and portions of the land on which no building was to be erected, prohibited the carrying-on of noxious or offensive trades, and prohibited anything being done thereon which may become an annoyance to the neighborhood.
The covenant and restrictions further provided that they shall run with the land and provided that in the event an owner violates or attempts to violate any of the covenants, any other person owning any real estate described in said restrictions may bring an action against the violator seeking an injunction or damages.
These covenants (although not violated by the existing structure or use thereof) prescribed minimum setbacks, restricted the type of building and structure that could be placed on the land and the type of activities that could be carried out on the land. Such restrictions render title unmarketable. (See, Golden Dev. Corp. v Weyant, 269 App Div 1039 [setback restriction]; Rosenberg v Centre Davis Corp., 15 AD2d 506 [restrictive covenants permitting construction or maintenance of one-family house only].) In Antin v O’Shea (270 App Div 1046), cited in Rosenberg v Centre Davis Corp. (supra), the contract provided in part that the property was sold " '[s]ubject to covenants and restrictions contained in former recorded deeds affecting said premises, provid[ed] they do not render title unmarketable.’ ’’ (Emphasis supplied.) A former deed contained a covenant " 'that there shall not be erected upon any portion of said premises any building for the sale of *676 intoxicating drinks or garden for the sale of ale or beer’ (Supra, at 1046.) The appellate court held that title was unmarketable and granted the purchaser’s motion for summary judgment for foreclosure of its lien and recovery of the down payments and expenses.
In Laba v Carey (29 NY2d 302) cited and relied upon by the majority, although it contained similar provisions as to title insurance, did not contain similar provisions as to marketability of title.
The pertinent provisions contained in the NYBTU form of contract in the Laba case were as follows. It provided that the seller shall give and the purchaser shall accept a title such as any reputable title company would accept and insure. The contract also expressly provided that the sale and conveyance was subject to:
"4. Covenants, restrictions, utility agreement and easement of record, if any, now in force, provided same are not now violated.
”5. Any set of facts an accurate survey may show, provided same does not render title unmarketable.” (Laba v Carey, 29 NY2d 302, 305, supra.)
The court there held that the purchaser received exactly what he had bargained for in the contract. The purchaser was not entitled to an unconditional title policy without exception since he agreed to take title subject to the covenants, restrictions, utility agreements and easements of record provided that they were not violated, which they were not. There was no additional proviso in the Laba case, as there is in this case, to wit: "or render title unmarketable.” The only proviso made with reference to marketable title had to do with facts that might be shown on a survey.
The instant case is obviously distinguishable. The purchaser in this case has not been offered that which he had bargained and negotiated for.
In conclusion, to adopt the construction suggested by the majority would do violence to the specific intent of the parties at the time that contract was executed. The majority proposal, that a provision added to the contract is superfluous, is contrary to the basic principles of contract law (see, 22 NY Jur 2d, Contracts, § 221).
Monteleone, J. P., and Santucci, J., concur; Pizzuto, J., dissents in a separate memorandum.